FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
JUL 26 2021
MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL JACOBS and
RUBY HANDLER JACOBS

Plaintiffs,

vs. Case. no. **21cv690-KWR-SCY**

THE JOURNAL PUBLISHING COMPANY *d/b/a* THE ALBUQUERQUE JOURNAL; WILLIAM P. LANG; NICOLE PEREZ; JAMES THOMPSON; ELISE KAPLAN; KAREN MOSES; and DOES 1 THROUGH 20; INDIVIDUALLY OR JOINTLY and SEVERALLY

Defendants.

---

**COMPLAINT FOR COPYRIGHT VIOLATION, THEFT AND CONVERSION, TRESPASS, DEFAMATION, INVASION OF PRIVACY AND FALSE LIGHT, DECLARATORY RELIEF, WITH DEMAND FOR JURY TRIAL**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

**COMES NOW**, *pro se*[1] Plaintiffs Michael Jacobs and Ruby Handler Jacobs ("Plaintiffs" or the "Jacobses"), filing this Complaint (the "Complaint") against William P. Lang ("Lang") the Journal Publishing Company d/b/a as the Albuquerque Journal ("Journal"), Nicole Perez ("Perez"), James "Jim" Thompson ("Thompson"), Elise Kaplan ("Kaplan"), Karen Moses ("Moses") and Does 1 through 20 ("Does"). Plaintiffs allege as follows:

---

[1] The Supreme Court found that pro se pleadings should be held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 520 (1971), *Puckett v. Cox*, 456 F. 2d 233 (1972) (6th Cir. USCA).

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

2. This Court has federal question jurisdiction over this claim because Defendants' copyright infringement violated the Federal Copyright Act, 17 U.S.C. § 101, et seq.

3. This Court has federal question jurisdiction over this claim because Defendants' copyright infringement violated the Federal Copyright Act, 17 U.S.C. § 501.

4. This Court has federal question jurisdiction over this claim Contributory Copyright Infringement 17 U.S.C. § 106.

5. This Court has federal question jurisdiction over this claim Plaintiff alleges copyright infringement under the Copyright Act, 17 U.S.C. § 1202(a).

6. Title 17, Chapter 12 Copyright Law of the United States provides that any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation (17 U.S.C. § 1202(a)).

7. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State and the amount at stake is more than $75,000 is a diversity of citizenship case.

**8.** This Court has Ancillary jurisdiction under 28 U.S.C. §1367(a) which allows a federal court to hear a claim that would normally be outside of its subject-matter jurisdiction if it is substantially related to a claim that is within the court's jurisdiction. A claim comes within a federal court's ancillary jurisdiction when it bears a logical relationship to the aggregate core of operative facts of the main claim. Ancillary jurisdiction has been replaced entirely by supplemental jurisdiction, per 28 U.S.C. § 1367(b), part of the U.S. supplemental jurisdiction statute.

## VENUE

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), in that the Plaintiffs reside in this District. Further, Defendants transact business in, and their conduct as averred in this Complaint, occurred in this District and the State of New Mexico.

## THE PARTIES TO THIS COMPLAINT

### The Plaintiffs

10. Plaintiff Michael Jacobs ("Plaintiff Jacobs") is a private adult resident of Albuquerque, Bernalillo County, and a citizen of New Mexico. Plaintiff Jacobs has been a professional photojournalist and member of the press for over fifty years. Plaintiff Jacobs has also been an instructor and adjunct professor in journalism for more than twenty years.

11. Plaintiff Ruby Handler Jacobs ("Plaintiff Handler Jacobs") is a private adult resident of Albuquerque, Bernalillo County, and a citizen of New Mexico.

12. Plaintiffs reside at 800 Calle Divina NE, Albuquerque, NM 87113 (the "Property").

### The Defendants

13. Defendant Journal is a media corporation organized and existing under the laws of the State of New Mexico with its' principal offices at 7777 Jefferson Street NE, Albuquerque, NM 87109.

14. Plaintiffs are informed and therefore believes, and thereon alleges that, at all times herein mentioned, each of the following Defendants sued was an agent and/or employee of the Journal and was at all times acting within the purpose and scope of such agency and employment.

15. Plaintiffs are informed and therefore believes that DEFENDANT LANG is an adult resident of Corrales, New Mexico and is currently employed by the Journal as its' publisher.

16. Plaintiffs are informed and therefore believe that DEFENDANT PEREZ is an adult resident of San Francisco, California and was employed by the Journal as a journalist. She is believed to be currently employed by Wood Thumb at 173 Shipley Street, San Francisco, CA 94107.

17. Plaintiffs are informed and therefore believe that DEFENDANT THOMPSON is an adult resident of Albuquerque, New Mexico and is currently employed by the Journal as a photographer.

18. Plaintiffs are informed and therefore believe that DEFENDANT KAPLAN is an adult resident of Albuquerque, New Mexico and currently employed by the Journal as a Staff Writer.

19. Plaintiffs are informed and therefore believe that DEFENDANT MOSES is an adult resident of Albuquerque, New Mexico and currently employed by the Journal as its' Editor in Chief.

20. Plaintiffs are uninformed of the true names and capacities of defendants sued herein as DOES 1 through 20 inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities if and when ascertained.

21. Hereinafter the parties referenced above shall be collectively referred to as "Defendants."

## FACTUAL BACKGROUND

22. Due to a relationship of inveiglement and deception by an international con artist, Sri Lankan Rienzie Mahesh Kumara Edwards, on December 11, 2016 Plaintiffs were arrested per a warrant as a result of a sealed Federal Indictment referred to a case entitled *United States v.*

Edwards et. al. ("NY Case"). Plaintiff Jacobs was detained in Los Angeles, California while Plaintiff Handler Jacobs was detained in Albuquerque, New Mexico. The NY Case against the Jacobses has been closed since July 19, 2019 for Plaintiff Jacobs and September 6, 2019 for Plaintiff Handler Jacobs.

23. Plaintiffs are informed and therefore believe that on or about December 15, 2016, Defendant Journal initially published an online article (https://www.abqjournal.com/909608/nm-couple-helped-steal-50-million-in-international-fraud-ring.html) (See Exhibit 1) concerning Plaintiffs which then appeared in its' print edition on December 16, 2016. The "print edition" is currently available on the website Newspapers.com (See Exhibit 2). Plaintiffs were not aware, nor could become aware, of any of the Journal publications until first discovered on or about September 28, 2019 by Plaintiff Jacobs, per date stamp on Exhibit 1. Moreover, the Journal posted on their Facebook page defamatory statements which also placed Plaintiffs in false light that was not discovered by Plaintiff Jacobs until on or about August 29, 2020. (See Exhibit 3).

24. The terms "publication" or "published," for the purposes of this Complaint, refers to the original publication date as well as the continuing publication of the defamatory material on the Journal's website and Facebook Page, and in known and unknown global outlets either mentioned herein or to be sought through discovery.

25. The underlying nature of the Journal article (hereinafter referred to as the "Jacobs article") concerned accusations filed against Plaintiffs on or about December 12, 2016 which has since been concluded. Said Jacobs article, hereinafter to be referred to as containing the "defamatory material," was authored by Defendants Perez and Kaplan (hereinafter together referred to as the "writers") with a number of photographs taken by Defendant Thompson, and all approved for publication by editor Defendant Moses.

26. Plaintiffs claim that Defendants Perez and Thompson did willfully trespass on their "Private Property: No Trespassing" signed Property (the "Sign") in violation of NM Statute § 30-14-1(A). (See Exhibit 4)

27. The defamatory material includes one central photograph (the "Cannes photograph"), depicting Plaintiffs standing in front of grand yachts, that Plaintiffs aver was stolen from a frame in their home and was used contrary to Plaintiff Jacobs' ownership, copyright and without his knowledge and permission. The caption in the Journal states the Defendants admit that the Cannes photograph "was **found** at their [Jacobs] Northeast Albuquerque home" and purposefully does not refer to the physical location where the photograph was originally created which leads to false light conclusions. (emphasis added).

28. This theft and conversion, when discovered by Plaintiff Jacobs was reported to the Albuquerque Police Department ("APD") and filed under Case number 19-100264 on or about October 25, 2019. Plaintiffs sent a certified demand letter to Defendant Lang at the Journal on or about December 14, 2019 and received a response from their counsel, Mr. Charles R. Peifer ("Mr. Peifer") on or about January 20, 2020.

29. Plaintiff Jacobs states that he is the sole owner of the Cannes photograph which was created at the May 2016 Cannes Film Festival in France. The photograph was taken using Plaintiffs' cell phone and they are in possession of the original digital file. Plaintiff Jacobs has the Cannes photograph registered with the U.S. Copyright Office.

30. Aside from publishing the Cannes photograph in the Jacobs article, Plaintiff Jacobs discovered that the image was also converted for use in foreign publications such as, but not limited to, the *Singapore Straights Times* newspaper (published January 12, 2017) (See Exhibit 5), a Chinese Malaysian newspaper (published January 10, 2017 and first discovered May 30,

2020) (See Exhibit 6), and the Sri Lanka Royal Turf Club Facebook site, all with photo credit given to the Journal as well as copyright claimed. (See caption in Exhibit 5).

31. Moreover, Plaintiff Jacobs has also discovered that the Journal is utilizing the services of a California photo agency, Zuma Press ("Zuma"), who ironically is Plaintiff Jacobs' agent, to distribute the Cannes photograph worldwide along with other unauthorized photographs taken at Plaintiffs' home. On or about August 30, 2020 Plaintiff Jacobs discovered images on the Zuma partner Imago-Images ("Imago") website in Germany (See Exhibit 7).

32. The defamatory material also includes misleading and factually false information that was allegedly obtained during an interview by Defendant Perez with Melissa Carroll ("Carroll"), the paramour of Plaintiffs' house-sitter Brandon Clark ("Clark") during a trespass on Plaintiffs' home and chattel. Defendant Kaplan also contributed to the Jacobs article.

## FACTUAL ALLEGATIONS

**Copyright Infringement**

33. As seen in the caption of the "found" Cannes photograph (See Exhibit 1) Defendants admit that Perez and Thompson stole an original paper copy from his home on or about December 15, 2016. Rather than using Plaintiffs' Motor Vehicle Department photographs, which are in the public domain and would be lawful and appropriate by way of identifying Plaintiffs to illustrate the Jacobs article, Defendants chose to steal a photograph that would have a copyright owner other than the Journal.

34. Defendants and Does are in violation of Section 1202(b) of the Digital Millennium Copyright Act of 1998 ("DCMA") in that they stole a non-digital paper print, scanned the print, created a digital image, and then placed their own copyright management information to facilitate or conceal its infringement. (See Exhibit 8 and Exhibit 9)

**Defendants Perez and Thompson Did Trespass on Plaintiffs' Property and Chattel**

35. Plaintiffs claim that Defendants Perez and Thompson did intentionally trespass on their "Private Property: No Trespassing" Sign (See Exhibit 4) and contrary to NM Statute § 30-14-1(A) in that they did not have written permission. The Sign, which has been posted on the Property since 2011, was clearly displayed in the front yard of Plaintiff's Property and the mere entering of the Property by Defendants was a violation thereof. Furthermore, Perez and Thompson remained on the Property without the written permission of the Plaintiffs or anyone else for that matter.

36. The United States Court of Appeals for the Fourth Circuit in *Food Lion, Inc. v. Capital Cities/ABC, Inc.* 194 F.3d 505 (4th Cir. 1999) wrote that even though the publication of the story was in the public interest, the press "has no special immunity from the application of general laws." And, the Supreme Court has said in no uncertain terms that "generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Cohen v. Cowles Media Co*., 501 U.S. 663, 669 (1991).

37. As noted in the defamatory material, Plaintiffs aver that Perez and Thompson would have been fully aware that the Cannes photograph did not belong to Carroll. Thompson photographed, and had images published, of the interior of Plaintiffs' residence, again without Plaintiffs' written permission or knowledge. Plaintiffs assert that all Defendants acted with reckless disregard and/or willful blindness.

38. Plaintiffs further alleges that Defendants Perez and Thompson with intent, did willfully trespass on Plaintiffs' chattel[2] including but not limited to the Cannes photograph,

---

[2] "Trespass to chattel is the intentional use or interference with a chattel which is in the possession of another, without justification" *Mestas v. CHW Grp.*, No. 19-CV-792 MV/CG, at *28 (D.N.M. Dec. 16, 2020)

Plaintiff Jacobs' business whiteboard and Plaintiff Handler Jacobs' United States Marshal Service ("USMS") badge (See Exhibit 10). These Defendants did interfere with the chattel and Plaintiffs aver that they had knowledge that a disturbance would occur.

39. Moreover, Carroll had specific instructions, as outlined in the signed house-sitter agreement with Clark, that she did not have authorization to allow anyone into the Plaintiffs' home and was specifically prohibited from doing so. Standard protocol and instructions and for house-sitters includes the duty to protect Plaintiffs' possessions.

40. In the alternate, Plaintiff further alleges a Private Nuisance violation. In *State ex Rel. Baxter v. Egolf*, 107 N.M. 315, 317 (N.M. Ct. App. 1988) the court opines: "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts § 821D (1979). The elements of proof depend on whether the conduct is intentional or unintentional. Liability for intentional conduct requires that the conduct be unreasonable. *Padilla v. Lawrence*, 101 N.M. 556, 685 P.2d 964 (Ct.App. 1984).

41. Defendants Perez and Thompson did intentionally invade "another's interest in the private use and enjoyment of land" when they unreasonably entered Plaintiffs' home, acted as if they had a "search warrant" while walking around the private areas of the home, unreasonably stole the Cannes photograph and possibly other items, and unreasonably photographed Plaintiffs' chattel.

42. The defamatory material contains an unauthorized photograph as credited to Thompson, of Plaintiff Jacobs' private office whiteboard, in a non-common area. Moreover, publishing the writings on the whiteboard is not only an invasion of privacy, but did lead to unfounded speculation. This photograph also appeared in the March 23, 2017 *Sri Lanka Express*

(discovered on May 23, 2020) (See Exhibit 11) wherein it has a false conclusionary caption which unduly damaged Plaintiff Jacobs' reputation abroad. The defamatory material also contains a Thompson credited photograph of Carroll in Plaintiff Jacobs' private office holding his personal documents as she was coerced, the Plaintiffs aver, by Perez and Thompson. These documents did not have any correlation to the accusations filed. Moreover, Carroll did not have a right to enter Plaintiff Jacobs' private office and neither did the defendants.

**Defamation Against Plaintiffs as an Intentional Tort**

43. Plaintiffs aver that the Defendants' defamation was deliberate and acted upon with negligence, recklessness and with willful blindness, and that Defendants failed to verify the truthfulness of Carroll for the Jacobs article. In addition to the Cannes photograph, Plaintiffs claim false and misleading statements appeared in the defamatory material and continue to be seen on the Journal's website, Facebook page and in foreign publications. Moreover, Defendants have painted a sordid picture of Plaintiffs leading the Journal's readers to falsely believe that Plaintiffs held Clark and Carroll as indentured servants.

44. Plaintiffs claim the following false and misleading statements appeared in the defamatory material and continue to be seen on the Journal's website, Facebook page and in foreign publications. Plaintiffs aver that the Defendants' defamation was deliberate and acted upon with negligence, and that Defendants failed to verify the truthfulness of the Jacobs article. (See Exhibit 1):

a. "Michael Jacobs and his wife, Ruby Handler-Jacobs, often took long trips to foreign countries. Sometimes they came home with brand-new cars."

b. "Jacobs and his wife, both 64, had swindled at least a dozen investors across the globe out of more than $50 million with the help of four other people" This was also on the Journal's Facebook page.

c. "At least 12 investors took the bait" according to a[n unknown] spokeswoman for the Southern District of New York U.S. Attorney's Office."

d. "A whiteboard in Michael Jacobs' office, where he spent 8 to 10 hours every day working on investments."

e. "According to the indictment, Jacobs and Handler-Jacobs' racket started no later than June 2013…"

f. "For Carroll – who, with her fiancé, helped the couple run a security business named No Stone Unturned in exchange for housing."

g. "Three years ago, the couple opened their home to a man who would become Carroll's fiancé, who was working at the security firm."

h. "She and her fiancé took over the daily operations of the security business but weren't paid for their work."

i. "And they repeatedly told Melissa Carroll, who lived in their two-story stucco house in Northeast Albuquerque and managed the couple's security business, that they were making money from investors and would soon buy her and her fiancé a new home to live in."

j. In the photo caption on page 4 of Exhibit 1, "Melissa Carroll was fully dependent on a couple… Now Carroll is worried the house will be seized and she won't have a place to live."

45. Moreover, in publishing the defamatory material, Defendants exhibited intentional malice toward Plaintiffs when the Journal omitted the appropriate disclaimers, as stated to wit in the Southern District of New York press release: Footnote 1 on the first page and the last paragraph. (See Exhibit 12):

46. Plaintiffs therefore aver that it is a pattern of practice by the Journal in that they did not include the disclaimer from the Plaintiffs' dismissed New Mexico Attorney General ("NMAGO") case ("NM Case") press release in their 2012 article about Plaintiffs.

**Libel per se**

47. Plaintiffs aver that the defamatory material within the Jacobs article contains false and malicious writings which establish libel per se as it renders them "contemptible or ridiculous

in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him." *Marchiondo v. New Mexico State Tribune Co.*, 648 P.2d 321, 98 N.M. 282 (1981).

**Plaintiff Sought Settlement with Defendant Journal**

48. Plaintiffs forwarded a certified letter of intent to file a lawsuit to the Journal's publisher demanding that the publication cease the usage of Plaintiff Jacobs' copyright Cannes photograph and other defamatory material. Moreover, this action constituted a "take down notice" pursuant to Title II of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 (2000). The Journal's counsel, Mr. Peifer, of Peifer, Hanson, Mullins & Baker, P.A., stated that the Journal declines Plaintiffs' settlement offer in his reply dated January 15, 2020.

49. Therefore, Plaintiffs assert that the continuing publication of all the defamatory material is unlawful, willful, and unconscionable.

**FIRST CAUSE OF ACTION**
**Copyright Infringement Per Se**

50. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against all Defendants.

51. Plaintiffs allege copyright infringement under the Copyright Act, 17 U.S.C. § 101, et seq. Plaintiffs claim that the Defendants' infringement was willful, intentional and in disregard of Plaintiff Jacobs' rights.

52. WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against the Defendants in compensation of the direct and consequential economic and non-economic damages he has suffered, as well as punitive damages, cost of suit and attorney fees. Plaintiffs seek damages under 17 U.S.C. § 504(c)(1) wherein the district court may grant anywhere between $750.00 and $30,000.00 for each copyright infringed. As of July 26, 2021 all

infringement was for 8,366 days equaling a minimum award of $6,274,500. Moreover, if the defendant's infringement was adjudged willful, the district court may also, in its discretion, enhance the statutory damages award to as much as $150,000 per infringed work. 17 U.S.C. § 504(c)(2).

**<u>SECOND CAUSE OF ACTION</u>**
**Contributory Copyright Infringement**

53. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against all Defendants.

54. Plaintiffs allege copyright infringement under the Copyright Act, 17 U.S.C. § 501 et seq. Plaintiffs claim that the Defendants' infringement was willful, intentional and in disregard of Plaintiff Jacobs' rights.

55. WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against the Defendants for trespassing on Plaintiff's real property, in compensation of the direct and consequential economic and non-economic damages he has suffered, as well as punitive damages, cost of suit and attorney fees.

**<u>THIRD CAUSE OF ACTION</u>**
**Copyright Management Infringement**

56. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against all Defendants.

57. Plaintiffs allege copyright infringement under the Copyright Act, 17 U.S.C. § 1202(a). (See Exhibits 8 and 9).

58. Title 17, Chapter 12 Copyright Law of the United States provides that any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation (17 U.S.C. § 1202(a)). Furthermore, 17 U.S.C. §

1202(c)(3)(A) provides for a maximum award of statutory damages of $2,500 per each act of circumvention which numbers 8,366 days as of July 26, 2021. For all infringements, Plaintiffs seek a minimum of $20,915,000.00.

59. WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against the Defendants for trespassing on Plaintiff's real property, in compensation of the direct and consequential economic and non-economic damages he has suffered, as well as punitive and statutory damages, cost of suit and attorney fees.

## FOURTH CAUSE OF ACTION
**Plagiarism**

60. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against all Defendants.

61. Black's Law Dictionary defines direct plagiarism as "[t]he deliberate and knowing presentation of another person's original ideas or creative expressions as one's own;" Plagiarism, Black's Law Dictionary (11th ed. 2019).

62. WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against the Defendants for the unauthorized usage of Plaintiffs' Cannes photograph, in compensation of the direct and consequential economic and non-economic damages they have suffered, as well as punitive damages, cost of suit and attorney fees.

## FIFTH CAUSE OF ACTION
**Intentional Tort of Trespass Per Se**

63. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against Defendants Perez and Thompson.

64. Plaintiffs allege that Defendants Perez and Thompson did knowingly and willfully trespass upon Plaintiff's "Private Property: No Trespassing" posted Property on or about

December 14, 2016, without any written permission in violation of NM Statute § 30-14-1(A) and as a direct and intentional act.

65. WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against the Defendants for trespassing on Plaintiffs' real Property, in compensation of the direct and consequential economic and non-economic damages they have suffered, as well as punitive damages, cost of suit and attorney fees.

## SIXTH CAUSE OF ACTION
**Intentional Tort of Trespass of Chattel Per Se**

66. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against all Defendants.

67. Plaintiffs allege that on or about December 14, 2016, the Defendants trespassed upon Plaintiff's chattel as evidence by the Cannes photograph caption stating that the [framed] photograph was "found" in Plaintiffs' home. Plaintiffs aver that Defendants removed an unknown amount of Plaintiffs' chattel from the Property possibly including the missing USMS badge (image #2 in Exhibit 7) and other unknown items. Defendants continually deprived Plaintiff Jacobs of possession or control of the Cannes photograph and the other items. Plaintiffs are informed and therefore believes that Defendant Journal and all Defendants are currently in possession of the chattel.

68. WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against the Defendants for trespassing on Plaintiff's chattel, in compensation of the direct and consequential economic and non-economic damages they have suffered, as well as punitive damages, cost of suit and attorney fees.

**SEVENTH CAUSE OF ACTION**
**Intentional Tort of Conversion Per Se**

69. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against all Defendants.

70. Plaintiffs allege that on or about December 15, 2016, the Journal first published Plaintiff Jacobs' personal property, i.e., the copyrighted Cannes photograph, that it was unlawfully acquired by Defendants Perez and Thompson while trespassing on Plaintiffs' chattel and home. Plaintiffs aver this is *prima-facie* admission of guilt when Defendants wrote in the Jacobs article that they "found" the photograph in Plaintiff and Spouse's home and when Defendant's counsel refused to return the Cannes photograph (See ¶47 above). At all times herein mentioned, Plaintiffs are entitled to the possession of their personal property.

71. The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and does justify the awarding of exemplary and punitive damages in the amount of no less than $1,000,000.00.

72. WHEREFORE, Plaintiff respectfully request this Court enter a judgment against the Defendants in compensation of the direct and consequential economic and non-economic damages they have suffered, as well as punitive damages, cost of suit and attorney fees.

**EIGHTH CAUSE OF ACTION**
**Intentional Tort of Defamation Per Se**

73. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against all Defendants.

74. Plaintiff alleges that with the September 2019 discovery of publication of the defamatory material, a *prima-facie* tort, Defendants did willfully publish a public communication with the defamatory material including certain asserted statements of facts concerning the

Plaintiffs. Plaintiff asserts that this publication satisfies the definition as stated in UJI 13-1003. The statements of facts in question, as presented, are either patently false and or misleading and readers who viewed and continue to view the defamatory material understand it to be defamatory.

75. The defamatory material was calculated to cause, and continues to cause, great injury to Plaintiff's reputation: such as any lost earnings, future lost earning capacity, and other lost business or economic opportunities that he suffered or is likely to suffer as a result of the defamatory statements, lost economic opportunities may include such losses as loss of current clients or a reasonable expectation of losing future clients and/or associates.

76. Plaintiffs required medical and mental health treatment as a result of the defamatory communications allowing the Plaintiffs to be entitled to recover damages for his health care bills and expenses, pain and suffering, damage to reputation, lost wages, or loss of ability to earn a living, and personal emotional reactions such as shame, humiliation, and anxiety. Therefore, the continued publication of the defamatory material causes actual injury to Plaintiffs' reputation while the Journal abused its privilege to publish the communication (2UJI 13-1002(B) NMRA).

77. WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against the Defendants in compensation of the direct and consequential economic and non-economic damages they have suffered, as well as punitive damages, cost of suit and attorney fees.

## NINTH CAUSE OF ACTION
**Invasion of Privacy, Right to Publicity and False Light Per Se**

78. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against all Defendants.

79. Plaintiffs allege that Defendants violated their privacy when they caused the

invasion of Plaintiffs' private affairs and activities by publication of the defamatory material as a result of trespass, and in a manner that is so objectively unreasonable as to offend or embarrass an ordinarily prudent person. Defendants also misrepresented Plaintiffs in a way that placed them in a false light. Moreover, Plaintiffs claims their right to Publicity in that Defendants published an unlawfully obtained photograph for commercial gain on the top of the front page of the Journal intended to attract readership. (See Exhibit 2).

80. Plaintiffs assert that Defendants stole the Cannes photograph to provide as much negative imagery as possible when public photographs from the Motor Vehicles Department would have sufficed for mere identification.

81. The Defendants acted with reckless disregard as to the falsity and misleading nature of the published derogatory material satisfying Restatement (Second) of Torts § 652E. Plaintiffs allege that Defendants used Plaintiffs' name and likeness in the stolen Cannes photograph without their permission. Prosser, Torts § 117 (4th ed. 1971) the Defendants published the Jacobs article with knowledge of its falsity and/or in reckless disregard of the truth.

82. WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against the Defendants in compensation of the direct and consequential economic and non-economic damages they have suffered, as well as punitive damages, cost of suit and attorney fees.

**TENTH CAUSE OF ACTION**
**Tort of Negligence Per Se**

83. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against all Defendants.

84. Upon information and belief as described hereinabove and as a matter of law, Plaintiffs claim this Cause against Defendants, having acted in furtherance of wrongful conduct aimed at Plaintiffs, and have violated the tort of Negligence:

a. Defendants have an obligation requiring them to adhere to a reasonable standard of care;

b. Defendants breached their duties as set forth above;

c. Defendants did cause injury to Plaintiffs; and

d. Defendants' breach directly and proximately caused injury to Plaintiffs as set forth above.

85. Plaintiffs further allege that Defendants were negligent in publishing the Jacobs article knowing that Carroll's interview was single-sided hearsay yet published as fact. Plaintiffs have been severely damaged by the "but-for" Jacobs article which requires compensation for their injuries (See ¶¶ 43, 44(a-j) above).

86. WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against the Defendants in special compensation of the direct and consequential economic and non-economic damages they have suffered, as well as punitive damages, cost of suit and attorney fees.

## ELEVENTH CAUSE OF ACTION
**Negligent Infliction of Emotional Distress Tort**

87. Plaintiffs incorporate by reference all of the preceding paragraphs and allegations therein as if fully set forth herein and brings this claim against all Defendants.

88. Plaintiff Jacobs, who is 100% disabled veteran, alleges that he continues to suffer severe emotional distress because of Defendants' extreme and egregious conduct. Plaintiff Handler Jacobs is a Leukemia patient and also continues to suffer severe emotional distress. Plaintiffs further allege that Defendants' conduct is so outrageous in character, and so extreme in degree, that a reasonable member of the community would regard the conduct as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community with intentionally or recklessly made statements that created a high degree of risk of harm, yet

deliberately proceeded to act with conscious disregard or indifference to the risk.

89. Specifically, Defendants made misleading or false statements of fact in a regionally circulated newspaper and internationally on the Internet. The Journal deliberately did not follow through on the Jacobses story as to the outcome leaving readers unaware of the finality of both the previous NM Case and NY Case referred to hereinabove. Moreover, the Journal did not publish the "presumption of innocence" disclaimers provided to them in the NY Case press release (See Exhibit 12)

90. Plaintiffs have and continually suffers substantial injury as a result of Defendants' defamatory material, including but not limited to injury to character and reputation, mental anguish, loss of consortium, loss of past and future income and loss of earning capacity. Plaintiffs have suffered direct and irreparable personal and economic injury.

91. WHEREFORE. Plaintiffs respectfully request this Court enter a judgment against the Defendants in compensation of the direct and consequential economic and non-economic damages they have suffered, as well as punitive damages, cost of suit and attorney fees.

## PRAYER FOR RELIEF AND CONCLUSION

WHEREFORE, Plaintiffs respectfully prays for the following relief against each and every Defendant:

A. That the Court order injunctive relief as outline in Plaintiff's Motion for Copyright Impoundment and Temporary Restraining Order or Preliminary Injunction.

B. That the Court provides a Declaratory Judgment that Plaintiff is the creator and owner the Cannes photograph;

C. That information and personal property acquired during trespass has been unlawfully obtained;

D. That the Court orders the return the Cannes photograph to Plaintiff Jacobs, provide the digital files – owned and operated repositories - of all Thompson photographs taken at Plaintiffs' residence, and proof provided that all files have been destroyed;

E. That the Court orders the return of any of Plaintiffs' chattel in Defendants' possession;

F. That the Court orders the removal of the defamatory material from the Journal's websites and provide proof that all images have been requested to be removed from global publications;

G. That the Court order Defendants to provide Plaintiff with an accounting of income as a result of the usage of the images;

H. That the Court, under NM Stat § 56-8-3 (2019) finds interest at the legal rate on the value of the stolen Cannes photograph from and after December 15, 2016;

I. That the Court award to Plaintiff Jacobs statutory damages under 17 U.S.C. § 504(c) and 17 U.S.C. § 504(c)(1) of no less than $27,189,500.00;

J. That the Court award to Plaintiffs punitive, compensatory, and special damages of not less than $3,500,000.00 to be determined at trial;

K. Award all cost of this action, including attorneys' fee and court costs, to Plaintiffs; and

L. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

**RESERVATION OF RIGHTS**

Plaintiff reserves the right to amend this Complaint as new information becomes available to Plaintiff.

Respectfully submitted this 26th day of July 2021.

By: ______________________
Michael Jacobs
*Plaintiff*
800 Calle Divina NE
Albuquerque, NM 87113
Tel: (505) 321-3044
michael.mjphoto@gmail.com

By: ______________________
Ruby Handler Jacobs
*Plaintiff*
800 Calle Divina NE
Albuquerque, NM 87113
Tel: (505) 321-3055
rubyhandler@gmail.com