IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUL 26 2021

MITCHELL R. ELFERS
CLERK

MICHAEL JACOBS and
RUBY HANDLER JACOBS

    Plaintiffs,

vs.

THE JOURNAL PUBLISHING COMPANY
d/b/a THE ALBUQUERQUE JOURNAL;
WILLIAM P. LANG; NICOLE PEREZ; JAMES
THOMPSON; ELISE KAPLAN; KAREN
MOSES; and DOES 1 THROUGH 20;
INDIVIDUALLY OR JOINTLY and
SEVERALLY

    Defendants.

Case. no. _____

## MOTION FOR COPYRIGHT IMPOUNDMENT AND
## TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

In support of *pro se*[1] Plaintiffs Michael Jacobs ("Plaintiff Jacobs") and Ruby Handler Jacobs (Plaintiff Handler Jacobs") (collectively "Plaintiffs") motion and application for entry of a temporary restraining order or preliminary injunction against Defendant the Journal Publishing Company d/b/a The Albuquerque Journal (the "Journal") and remaining Defendants, they offer the following:

### I. INTRODUCTION

1.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1367.

---

[1] The Supreme Court found that pro se pleadings should be held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 520 (1971), *Puckett v. Cox*, 456 F. 2d 233 (1972) (6th Cir. USCA).

1

2.     The controversary concerns, but is not limited to, the internet usage of a stolen copyrighted photograph ("Cannes photograph") with fraudulent copyright claims by Defendants (Copyright Act, 17 U.S.C. § 101, et seq), trespass on Plaintiffs' real property and chattel, conversion and defamation as evidenced by the article published on-line by the Journal ("Jacobs article") (See Exhibit 1).

3.     Plaintiffs seeks Temporary Restraining Order and Preliminary Injunction relief ("injunctive relief") per FRCP Rule 65(a) as the service of this Complaint shall be deemed notice to Defendants. Furthermore, Plaintiffs seek the injunctive relief per Rule 65(f) as it applies to copyright-impoundment proceedings. Plaintiffs also request that all financial records that apply to Plaintiff Jacobs' Cannes photograph be impounded as soon as injunctive relief is issued. As demonstrated herein by specific facts, "immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." (Rule 65(b)(1)(A)).

4.     Section 502(a) of Title 17 U.S.C. gives the court authority to grant temporary and final injunctions to prevent or restrain infringements of a copyright. An injunction against the defendants will issue when the substantial likelihood of further infringement of Plaintiffs' copyright exists. *Milene Music, Inc. v. Gotauco,* 551 F. Supp. 1288, 1295 (D.R.I. 1982) as referred to in *Ackee Music, Inc. v. Williams*, 650 F. Supp. 653, 656 (D. Kan. 1986).

5.     In their December 14, 2019 certified Letter of Intent to the Journal, Plaintiffs informed Defendants that the photograph used in the Jacobs article had been stolen from Plaintiffs' home and that since the copyright of said photograph remains with Plaintiff Jacobs that they requested immediate removal of the image and article from any publication. The Journal's counsel informed Plaintiffs that the publication declined their settlement requests (See ¶19 below) while ignoring the theft of the photograph, the NM Statute § 30-14-1(A) criminal

trespass and defamation.

6. Plaintiffs specifically separate the facts surrounding their arrest, which publication is protected by the First Amendment, from the theft of the photograph, the use and copyright infringement of the photograph, conversion, the falsification of the Copyright Management Information ("CMI") on the Cannes photograph (See Exhibit 2), the trespass on Plaintiffs' real property and chattel with additional unauthorized photographs published, and defamation due to irresponsible reporting as a result of the trespass.

7. The Journal has neither legal ownership rights nor a legal right to possess Plaintiffs' property and in fact has trespassed upon the chattel *per se*, an intentional tort (Restatement Second of Torts, section 218).

8. Plaintiffs do not have any remedy in law. As this Complaint seeks to try all issues on their merits, Plaintiffs also request the injunctive relief on the Jacobs article *en totale* as the continued publication has and will cause irreparable harm to Plaintiffs.

9. Therefore, Plaintiffs request this Court order immediate injunctive relief.

## II.   STATEMENT OF FACTS

10. On or about December 13, 2016 Defendants received a Department of Justice Press Release stating that the unsealing of an indictment accused Plaintiffs, along with four other defendants, with certain crimes. The Plaintiffs were taken into custody on December 11, 2016 and were not released until July and September 2019 respectively.

11. Plaintiffs are informed and therefore believe that on or about December 15, 2016, Defendant employees of the Journal, Nicole Perez ("Perez") and James "Jim" Thompson ("Thompson") (collectively referred to hereinafter as the "trespassers"), trespassed on Plaintiffs' "Private Property, No Trespassing" signed real property without written permission to enter. The

3

trespassers then proceeded to interview Plaintiffs' house sitter Brandon Clark's ("Clark") paramour Melissa Carroll ("Carroll") who provided defamatory hearsay comments which the Journal printed as fact. During the trespass of Plaintiffs' home, the trespassers admittedly first "found" and then stole the Cannes photograph which belongs to Plaintiff Jacobs.

12. Plaintiffs are informed and therefore believe that on or about December 15, 2016, Defendants published the Jacobs article on-line containing the stolen Cannes photograph which remains in publication as of this Motion. Moreover, the Journal published the print edition on or about December 16, 2016 and continues to be available on the website Newspapers.com. (See Exhibit 3). Plaintiffs aver that Defendants placed the Cannes photograph and Jacobs article in circulation for payment to overseas publications which remain on line as of this Motion.

13. Plaintiff Jacobs has discovered that Defendants have willfully placed false copyright, ownership, and creation details in the Cannes photograph's on-line CMI data in violation of Copyright Act, 17 U.S.C. § 1202(a).

14. Plaintiff Jacobs first discovered the Jacobs article publication on-line on or about September 28, 2019. The Plaintiffs aver that the Jacobs article contains numerous false statements exhibited as fact while placing Plaintiffs in false light such as by the use of the Cannes photograph.

### III. ARGUMENT

**The Plaintiffs Are Entitled to Injunctive Relief to Prevent Irreparable Harm and Maintain the Status Quo Pending a Decision on the Issue of Copyright Infringement and Defamation as a Result of "but for" Trespass.**

15. Defendants Perez and Thompson invaded legally protected interests of Plaintiffs which are (1) concrete and particularized, and (2) actual not conjectural or hypothetical.

Plaintiffs have a personal stake in the dispute, and that injury-in-fact suffered is particularized[2] as to them. Plaintiffs factually allege a causal connection exists resulting in personal injury traceable to all non-moving parties direct unlawful conduct and is most likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). New Mexico negligence law requires a showing of causation, since the defendant's conduct must be the "but-for" cause of the violations.

### Standard for Temporary Restraining Order and Preliminary Injunction

16. The requirements for the issuance of a temporary restraining order are similar to those for the issuance of a preliminary injunction. *Braverman v. New Mexico*, No. CIV 11-0829 JB/WDS, at *40 (D.N.M. Sep. 26, 2012). Injunctive relief is considered an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted. *Greater Yellowstone Coal. v. Flowers,* 321 F.3d 1250, 1256 (10th Cir. 2003).

17. In order to obtain a temporary restraining order or a preliminary injunction, a party must establish four factors: (i) whether the moving party will suffer irreparable injury unless the injunction issues; (ii) whether there is a substantial likelihood that the moving party will eventually prevail on the merits; (iii) whether the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (iv) whether the injunction, if issued, would not be adverse to the public interest. See *Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999).

18. If a movant can show that the first, third, and fourth factors "tip strongly in his favor, the test is modified," and the moving party "may meet the requirement for showing

---

[2] *United States Parole Comm'n v. Geraghty,* 445 U.S. at 403, 402; *Raines v. Byrd*, 521 U.S. at 819 (emphasis supplied)

success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Okla. ex rel. OK Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006).

19. Plaintiffs mailed a certified return receipt letter to Defendants Journal and William Lang ("Lang") on December 14, 2019 with a response returned to him from Defendant Journal's counsel on or about January 20, 2020 stating that they would not:

   a. return the stolen Cannes photograph published in print and on-line;

   b. remove the defamatory article and stolen photograph from the Journal's websites;

   c. admit to any publication, or otherwise, that the Journal did not have the authority to provide the stolen photograph with evidence that this action has been performed;

   d. formally request that the stolen photograph be removed from on-line articles in the *Singapore Straight Times* (See Exhibit 4) and other publications, wherever they may be, with evidence that this action has been performed;

   e. provide an accounting of any income earned from use of the stolen photograph; and

   f. provide records of any usage of the stolen photograph whether sold or just provided.

**Factor 1.    Plaintiff will Suffer Irreparable Injury Unless the Injunctive Relief is Granted**

20. In seeking such relief Plaintiff argues that this judicial action is required to prevent continued injury for which there is no other means to prevent the threatened harm that can neither be corrected through monetary compensation nor can conditions be put back the way they were.

21. This is closely tied to the concept of "irreparable harm," and it requires a party seeking specific performance to prove the "insufficient adequacy" of money damages. Thus,

Plaintiffs cannot be compensated adequately in damages, as they cannot be measured by any certain pecuniary standard. In this instant matter, Plaintiffs and their family have already suffered irreparable injury at the hands the Journal and their co-defendants and will continue to suffer at least one identified and distinct form of harm: Google search of "Michael Jacobs Albuquerque and/or Ruby Handler Jacobs" first brings up the link to the Jacobs article and the Cannes photograph. Moreover, because of the publication of the Jacobs article, and to their limited knowledge how many incidents have occurred, Plaintiffs have recently suffered damage to their reputation on at least seven occasions, amongst others, that affects their business, their income, reputation, and personal relationships:

   a. In or about January 2020 Plaintiff Jacobs' estranged niece placed the Jacobs article link on *MyHeritage* website, and on *Facebook*, which resulted in irreconcilable damage with his family. When discovered, Plaintiff Jacobs informed the website about the posting, and they removed it on or about June 21, 2020. (See Exhibit 5).

   b. Plaintiff Jacobs is informed and therefore believes that in or about June 2020 his employer was notified of the Journal article by a subject that Plaintiff Jacobs was to photograph. The defamatory material put his job in jeopardy.

   c. On or about November 12, 2020 Plaintiff Handler Jacobs received an October 9, 2020 police report which had been filed due to vehicle theft, unauthorized credit card usage and fraud with commercial accounts by Carroll and Clark. The report specifically referred to the Jacobs article. The APD assumed all in the Jacobs article as truthful and "believed" that Plaintiff Handler Jacobs was convicted and not merely accused, and therefore didn't have a basis to file a police report with any further investigation. (See Exhibit 6).

   d. Plaintiff Jacobs is informed and therefore believes that in or about April 2021 his employer was notified of the Journal article by a subject that Plaintiff Jacobs was to photograph. The subject told Plaintiff Jacobs' employer that she would not allow him in her home thereby placing his job in jeopardy.

   e. Plaintiff Jacobs is informed and therefore believes that in or about April 2021 his collaborator/writer in a book project was contacted by a photographer who referenced the Jacobs article while asking why she would work with him. This incident places the book projects contemplated by Plaintiff Jacobs in jeopardy. Furthermore, after reading the Jacobs article, this photographer cancelled a

       previously offered project engagement in conjunction with the Journal.

    f. On May 11, 2021, Plaintiff Jacobs was told face-to-face by a long-time friend and business associate in Prescott, Arizona that he is no longer welcome because of information printed in the Journal therefore also ceasing a professional relationship.

    g. On May 11, 2021, Plaintiff Jacobs is informed and there believes that another long-time friend and business associate in Prescott, Arizona no longer will communicate because of information printed in the Journal therefore also ceasing a professional relationship and causing the loss of the estate's valued $1,000.00 business equipment which he now will not return to Plaintiff Jacobs.

**Factor 2.**     **There is a Substantial Likelihood that Plaintiff shall Prevail on the Merits**

22. It is unnecessary for this Court to conclude that Plaintiffs will certainly prevail on the claims as they need only demonstrate a "substantial likelihood" of success. *See LaBalbo v. Hymes* 115 N.M. at 18 (N.M. Ct. App. 1993). Moreover, "[u]nder some circumstances, the Tenth Circuit has recognized a relaxed 'modified likelihood of success' requirement." *County of Los Alamos v. United States DOE*, 2006 U.S. Dist. LEXIS 27262, *22-23 (D.N.M. Jan. 13, 2006).

23. "If a [movant] establishes that the latter three factors [referring to factors 1, 3 and 4 herein] 'tip strongly' in his or her favor, the likelihood of successful inquiry is modified somewhat, and the plaintiff may establish likelihood of success 'by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation'." *Valley Community. Pres. Comm'n v. Mineta*, 373 F.3d 1078, 1083-84 (10th Cir. 2004); *see Benjamin H.*, 1999 U.S. Dist. LEXIS 22469, at *35 (preliminary injunction should be granted when other factors weigh "heavily in favor of the [movants]").

**Factor 3.**     **Threatened and Continuing Injury to the Moving Party Outweighs Whatever Damage the Proposed Injunction may Cause the Opposing Party**

24. The harm, if any, that Defendant Journal might suffer if the requested injunctive

relief is granted is simply not irreparable due to, amongst others, the self-inflicted harm doctrine as it does not compare with, let alone outweigh the continuing irreparable harm to Plaintiff if the requested relief is not granted. The Jacobs article is almost five years old and there is no indication that the Journal would suffer any harm if the article were removed. Further, if the Journal and co-defendants had not been negligent for reasons stated herein and in the Complaint, this current action would not be necessary.

25. Moreover, to the extent delay may result in some financial loss to non-movant, Federal courts have held that economic harm is not irreparable (see *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

**Factor 4.   Issuance of Injunctive Relief would not be Adverse to Public's Interest**

26. To the extent that the requested injunctive relief has any impact on the public interest, it is more important to preserve the value of Plaintiff Jacobs' copyright registered personal property and his Constitutional right to enjoy his property without fear of being violated until the Court has an opportunity to determine the merits. Moreover, the public interest benefits when all parties expect that courts require compliance with the express textual requirements of statutory law rather than creating unauthorized judicial exceptions on a case-by-case basis. Included are the Plaintiffs' claims that the Jacobs article contains defamatory and libelous writings. Denying the requested Injunction would allow the Defendants to continue violating the letter of the law.

## IV.  CONCLUSION

27. Plaintiffs brings this Application for exigent relief in the form of a Temporary Restraining Order and Preliminary Injunction ordering the Defendant Journal and their agents to (i) immediately remove the Jacobs article in question from all its Internet websites including

Facebook and Newspapers.com; (ii) to inform all publications that have purchased or received images either stolen or photographed during the trespass, that the Journal had neither copyright nor right to promulgate such images, and to request out of professional courtesy that these images be immediately removed; (iii) to maintain and protect all financial and distribution records pertaining to the Cannes photograph and other unauthorized photographs; (iv) halt any and all activities going forward involving Plaintiff Jacobs' Cannes photograph and all unauthorized photographs; and (v) to provide the Court and Plaintiffs with documentary evidence that all of the above has been accomplished.

Dated:  July 26, 2021

Respectfully submitted

By _____
Michael Jacobs, *Pro Se*
800 Calle Divina NE
Albuquerque, New Mexico 87113
(505) 321-3044


By _____
Ruby Handler Jacobs, *Pro Se*
800 Calle Divina NE
Albuquerque, New Mexico 87113
(505) 321-3055