# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

MICHAEL JACOBS and
RUBY HANDLER JACOBS,

      Plaintiffs,

v.                                                                       Case No. 1:21-cv-00690-MV-SCY

THE JOURNAL PUBLISHING COMPANY
d/b/a/ THE ALBUQUERQUE JOURNAL,
WILLIAM P. LANG, NICHOLE PEREZ,
JAMES THOMPSON, ELISE KAPLAN,
KAREN MOSES, and DOES 1 THROUGH 20,
INDIVIDUALLY OR JOINTLY AND SEVERALLY,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on: (i) Plaintiffs' Motion for Copyright

Impoundment and Temporary Restraining Order or Preliminary Injunction (Doc. 2); and (ii)

Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 30). Plaintiffs are proceeding

_pro se_. For the reasons discussed below, I recommend that the Court DENY Plaintiffs' motion

for a preliminary injunction and GRANT Defendants' motion to dismiss.

## BACKGROUND

After Plaintiffs' indictment for white collar crimes, the Albuquerque Journal published an

online article (the "Jacobs article") about the events. Doc. 1 ¶¶ 22-23. Plaintiffs allege that the

material in the article was defamatory and placed them in a false light. _Id._ ¶ 23. Included in this

material is a photograph (the "Cannes photograph") that depicts Plaintiffs in front of two yachts.

_Id._ ¶ 27. Plaintiffs claim that this copyrighted photograph was "stolen from a frame in their

home" after Defendants Nichole Perez and James Thompson trespassed onto Plaintiffs' property.

*Id.* Other newspapers and internet sources such as the *Singapore Straights Times* and the Sri

Lanka Royal Turf Club Facebook site then used the Cannes photograph. *Id.* ¶¶ 30-31.

Plaintiffs filed suit against the Journal Publishing Company, doing business as the

Albuquerque Journal, as well as newspaper employees William P. Lang, Nichole Perez, James

Thompson, Elise Kaplan, Karen Moses, and several John Does. Plaintiffs allege the following

against all defendants unless otherwise noted:

> Count 1: Copyright Infringement Per Se
> Count 2: Contributory Copyright Infringement
> Count 3: Copyright Management Infringement
> Count 4: Plagiarism
> Count 5: Trespass Per Se (against only Defendants Perez and Thompson)
> Count 6: Trespass of Chattel Per Se
> Count 7: Conversion Per Se
> Count 8: Defamation Per Se
> Count 9: Invasion of Privacy, Right to Publicity and False Light Per Se
> Count 10: Negligence Per Se
> Count 11: Negligent Infliction of Emotional Distress

Plaintiffs also filed for a temporary restraining order or preliminary injunction to remove

the Jacobs article from the internet and take other steps to prevent the ongoing distribution of the

Cannes photograph. Doc. 2. After adopting my proposed findings and recommended disposition

("PFRD") regarding the temporary restraining order (Doc. 8), Judge Martha Vazquez denied the

motion for a temporary restraining order and deferred ruling on the preliminary injunction. Doc.

43. Meanwhile, Defendants filed a motion to dismiss for failure to state a claim (Doc. 30). All

motions are fully briefed and ready for decision.

## DISCUSSION

### I.      Preliminary Injunction

A preliminary injunction is a court order to "preserve the relative positions of the parties

until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

The proponent must demonstrate a likelihood of success on the merits, a likelihood of irreparable

harm without the injunction, a balance of equities favoring their side, and a public interest in the injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017). It requires a showing of "significant risk" of "harm that cannot be compensated after the fact by money damages." *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016). A preliminary injunction is only necessary if the harm is "likely to occur before the district court rules on the merits." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021).[1]

Plaintiffs seek a preliminary injunction

> ordering the Defendant Journal and their agents to (i) immediately remove the Jacobs article in question from all its Internet websites including Facebook and Newspapers.com; (ii) to inform all publications that have purchased or received images either stolen or photographed during the trespass, that the Journal had neither copyright nor right to promulgate such images, and to request out of professional courtesy that these images be immediately removed, (iii) to maintain and protect all financial and distribution records pertaining to the Cannes photograph and other unauthorized photographs; (iv) halt any and all activities going forward involving Plaintiff Jacobs' Cannes photograph and all unauthorized

---

[1] Pursuant to an amendment in 2020, the Lanham Act governing trademark infringement grants a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits in preliminary injunction cases. 15 U.S.C. § 1116(a). However, before 2020, the statutory language did not include this presumption. *See Trial Lawyers Coll. v. Gerry Spence Trial Lawyers Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1270 (10th Cir. 2022). The Tenth Circuit's language seems to imply that the relevant timing for application of this amendment is when the district court rules—that is, since the Court is ruling on the preliminary injunction issue after the 2020 amendment, the amendment and its presumption apply. *See id.* This contrasts with the more conventional approach of applying the statute in effect at the time the relevant conduct took place—here, publication of the 2016 article containing the Cannes photograph. *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265-66 (1994). Because Defendants have rebutted any presumption of irreparable harm that might apply, resolution of this issue makes no difference to the outcome of the matter presently before the Court. *See Mountain Mike's Pizza, LLC v. SV Adventures, Inc.*, No. 2:21-cv-02387, 2021 WL 6136178, at *3-4 (E.D. Cal. Dec. 29, 2021) (presumption rebutted when no evidence beyond speculation that defendants would continue to use protected marks in future); *Massimo Motor Sports LLC v. Shandong Odes Indus. Co.*, Civil Action No. 3:21-CV-02180-X, 2021 WL 6135455, at *2 (N.D. Tex. Dec. 28, 2021) (presumption rebutted based on delay in seeking emergency relief).

> photographs; and (v) to provide the Court and Plaintiffs with documentary
> evidence that all of the above has been accomplished.

Doc. 2 ¶ 27. To begin, Plaintiffs argue that they will suffer irreparable injury in the absence of

injunctive relief because a Google search of their names links to the Jacobs article and because

they have already suffered reputational damage affecting their personal and employment

relationships. *Id.* ¶¶ 20-21. They also refer to the harm of ongoing copyright violations. Doc. 37

¶¶ 78-80. The previous PFRD (Doc. 8) and Judge Vazquez's order adopting it (Doc. 43) dealt

with the motion for a temporary restraining order, which involves consideration of the same

factors, and their findings demonstrating a lack of immediate, irreparable harm inform my

reasoning here.

Defendants argue, and I agree, that Plaintiffs' assertions of harm are largely monetary or

retrospective in nature. *See* Doc. 29 at 10-11. Plaintiffs cite the tension in, or termination of,

various business relationships because clients or coworkers read the Jacobs article, but they

provide no explanation as to why monetary damages could not repair these issues. Nor is it clear

that Plaintiffs' alleged reputational damage cannot be remedied by money damages or, in the

case of personal or familial reputation, that it will occur again in the future. *See DTC Energy*

*Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1271 (10th Cir. 2018) ("But not all plaintiffs who have

already suffered . . . intangible injury can show a sufficient probability of future irreparable harm

to warrant a preliminary injunction."); *Hunter v. Hirsig*, 614 F. App'x 960, 963 (10th Cir. 2015)

("[A]s a matter of well-settled law, allegations of reputational injury *do not* rise to the level of

irreparable harm that could justify injunctive relief."); *Schrier v. Univ. of Colo.*, 427 F.3d 1253,

1267 (10th Cir. 2005) (reputational damage is not necessarily irreparable). Plaintiffs cite past

harms and simply state, without supporting argumentation, that harms of this nature will

continue in the future. Doc. 2 ¶ 21; Doc. 10 ¶ 8; Doc. 11 ¶ 8; Doc. 37-1 ¶ 27; Doc. 37 ¶ 80. Such

statements are insufficient to establish the risk of irreparable injury necessary for a preliminary injunction. Without this element, further analysis is unnecessary. *See Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

## II.   Motion To Dismiss

The complaint alleges eleven counts, and Defendants have moved to dismiss all but the first count (that is, Counts 2 through 11) for failure to state a claim upon which relief may be granted. Defendants argue that no cause of action exists to support Count 4, that Counts 5 through 9 are barred by their respective statutes of limitations, and that Counts 2, 3, 10, and 11 are insufficiently pled.

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf*

5

*& Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the court required to accept as true legal conclusions that are masquerading as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

B.     Copyright Claims

1.     Count 2: Contributory Copyright Infringement

Plaintiffs allege contributory copyright infringement against all Defendants. Doc. 1 ¶¶ 53-55. Contributory copyright infringement occurs "when the defendant causes or materially contributes to another's infringing activities and knows of the infringement." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1146 (10th Cir. 2016). Plaintiffs claim that Defendants assisted the *Singapore Straits Times*, the Chinese Malaysian newspaper, and Imago Agency in perpetrating copyright infringement because the Cannes photo in those sources was credited to the *Albuquerque Journal*. Doc. 38 ¶ 25; *see also* Doc. 1 ¶¶ 30, 42. However, these assertions fail to state a claim. That these publications gave credit to the Journal only indicates that they knew the Journal published the photograph. It does not indicate that the Journal knew these other publications printed the Cannes photo or cited the Journal. Assertions unrelated to Defendants' actions do not bear on whether Defendants caused, knew of, or contributed to these third-party publications' allegedly unlawful use of the photograph. The complaint does not allege that

Defendants provided the photo to these third parties, encouraged or authorized them to use it, or even knew that they had used it.[2] Therefore, I recommend that the Court dismiss Count 2.

### 2.    Count 3: Copyright Management Infringement

Plaintiffs claim that all Defendants violated 17 U.S.C. § 1202(a) by providing false copyright management information. Doc. 1 ¶¶ 56-59. This provision prohibits a person from knowingly providing false copyright management information "with the intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a). The complaint's allegations on this count are vague. Plaintiffs state earlier in the complaint that Defendants "stole a non-digital paper print, scanned the print, created a digital image, and then placed their own copyright management information to facilitate or conceal its infringement." *Id.* ¶ 34. Plaintiffs' response clarifies that the conduct at issue here is that Defendants "plac[ed] the '*Copyright © 2016 Albuquerque Journal*' directly under the in print and on-line Cannes photograph" which caused readers to assume "that the image was owned by the *Journal*." Doc. 38 ¶ 27. Copyright management information includes this type of copyright message. *See Advanta-Star Auto. Rsch. Corp. of Am. v. Reynolds Ford, Inc.*, Case No. CIV-19-912-G, 2020 WL 5823537, at *3-4 (W.D. Okla. Sept. 30, 2020). Plaintiffs also state in their response that Defendants acted knowingly and with the requisite intent. Doc. 38 ¶ 27. However, the complaint itself lacks this information, and a motion to dismiss judges "the sufficiency of the allegations within the four corners of the

---

[2] Plaintiffs argue in their reply brief regarding the preliminary injunction that "[a]s a for-profit business it is inconceivable that the *Journal* would have just given the Cannes photograph to the foreign newspapers and other outlets without compensation." Doc. 37 ¶ 37. No allegation that the Journal received compensation for the photograph from third parties appears in the complaint, nor are there any supporting facts that would render such an allegation plausible. Therefore, in ruling on the Motion to Dismiss, the Court should not consider this speculation-based argument.

complaint[.]" *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003) (citation omitted).[3] Because the complaint is missing these essential allegations, I recommend that the Court dismiss Count 3.

3.     <u>Statutory Damages and Attorney's Fees For Copyright Claims</u>

Defendants seek to dismiss Plaintiffs' claims for statutory damages and attorney's fees based on the alleged copyright violations. Doc. 30 at 9. Plaintiffs did not copyright the Cannes photograph until May 20, 2020, years after the *Albuquerque Journal* published the Jacobs article featuring this photograph on or about December 16, 2016. *See* Doc. 30-1 at 1. 17 U.S.C. § 412 prohibits the award of statutory damages or attorney's fees for copyright infringement that took place before the effective date of registration unless registration occurs within three months after the work's first publication. *See Wilson v. Brennan*, 666 F. Supp. 2d 1242, 1264 (D.N.M. 2009). Here, the alleged infringement—publication of the Jacobs article with the Cannes photograph— took place years before the effective date of copyright registration. The original publication date[4] is listed as December 15, 2016, which is not within three months of the copyright registration date. *See* Doc. 30-1 at 1. Accordingly, I recommend that the Court find that statutory damages and attorney's fees for Plaintiffs' copyright claims are impermissible here.

C.     <u>Plagiarism</u>

In Count 4, Plaintiffs claim that Defendants' "unauthorized usage" of the Cannes photograph constitutes plagiarism and cite to Black's Law Dictionary for support. Doc. 1 ¶ 62.

---

[3] For this reason, the contents of the ten-page affidavit attached to Plaintiffs' response (Doc. 38-1) is not something the Court should consider. Even if it did consider the affidavit, however, it does not provide the information Count 3 lacks.

[4] Plaintiffs seek to dispute whether publication occurred at all. Doc. 38 ¶ 31. If publication did not occur, § 412 prohibits statutory damages or attorney's fees for any copyright infringement before the date of registration. 17 U.S.C. § 412(1). Because the alleged infringement here occurred years before registration, Plaintiffs still would not prevail.

Defendants argue, correctly, that no cause of action for plagiarism exists under New Mexico law. *See* Doc. 30 at 11. While Plaintiffs cite to *Yu v. Peterson*, 13 F.3d 1413 (10th Cir. 1993), and *Hand v. Matchett*, 957 F.2d 791 (10th Cir. 1992), *Yu* is an action under 42 U.S.C. § 1983 for unconstitutional termination from a public university, and *Hand* addresses New Mexico statutory authority to revoke a graduate degree. Neither purports to hold up plagiarism as its own cause of action. References to plagiarism in both cases—and a variety of others—occur as factual background related to causes of action other than plagiarism. Plagiarism is not itself an offense upon which relief may be granted. Therefore, I recommend that the Court grant dismissal as to this count.

### D.    Statute of Limitations

Defendants argue that Counts 5 through 9 cannot proceed because the various statutes of limitations for those claims have passed. They assert that Count 5, "intentional tort of trespass per se," allegedly occurred on December 14 or 15, 2016, but Plaintiffs filed suit on July 26, 2021—past the four-year limitations period. Doc. 30 at 12; N.M.S.A. § 37-1-4. Count 6, "intentional tort of trespass of chattel per se," and Count 7, "intentional tort of conversion per se," had the same alleged occurrence date and filing date and the same four-year statute of limitations. Doc. 30 at 12-13; N.M.S.A. § 37-1-4. Count 8, "defamation per se," and Count 9, "invasion of privacy, right to publicity and false light per se," allegedly occurred when the Jacobs article with the Cannes photograph was published on December 15, 2016, but Plaintiffs filed suit on July 26, 2021, past the three-year limitations period. Doc. 30 at 14-15; N.M.S.A. § 37-1-8.

    1.   <u>Trespass and conversion</u>

I first analyze Counts 5, 6, and 7, the counts that relate to Plaintiffs' claim that Defendants Perez and Thompson trespassed into their residence and stole the Cannes photograph.

Plaintiffs do not dispute that they filed suit more than four years after the days the events occurred, but they invoke the discovery rule. Plaintiffs argue that they did not become *aware* of the trespass, conversion, or publication of the Jacobs article—thereby starting the limitations period—until September 28, 2019. Doc. 38 ¶ 12; *see also* Doc. 1 ¶ 23 ("Plaintiffs were not aware, nor could become aware, of any of the Journal publications until first discovered on or about September 28, 2019 by Plaintiff Jacobs, per date stamp on Exhibit 1.").[5]

"[T]he discovery rule dictates that a cause of action does not accrue for purposes of calculating the limitations period until the plaintiff discovers, or should have discovered in the exercise of reasonable diligence, the facts that underlie his or her claim." *Butler v. Deutsche Morgan Grenfell, Inc*., 2006-NMCA-084, ¶ 26, 140 N.M. 111, 117-18. In *Williams v. Stewart*, the New Mexico Court of Appeals addressed the discovery rule in the context of newspaper articles. 2005-NMCA-061, 112 P.3d 281. *Williams* concerned the alleged practice of Los Alamos National Laboratory ("LANL") to have organs, tissues, and other body parts removed in the course of autopsies performed at area hospitals. 2005-NMCA-061, ¶ 2. The body parts were then delivered to LANL so that their plutonium content could be studied. *Id.* Little or no effort was made to obtain the informed consent either of the decedents before their deaths or, after their deaths, of their families. *Id.* ¶ 3. The program received significant publicity in the early nineties,

---

[5] Plaintiffs also argue for equitable tolling on the basis that they were imprisoned from 2016 to July 2019. Imprisonment is not a basis for tolling in New Mexico. *Mosgrave v. McManus*, 24 N.M. 227, 173 P. 196 (1918).

leading the district court to conclude, as a matter of law, that "Plaintiffs should have discovered their claims by June 1995." *Id.* ¶ 7. The court of appeals reversed.

In reversing, the court of appeals concluded that the question for the factfinder is "the level of awareness the publicity would generate to a reasonable person in Plaintiffs' communities." *Id.* ¶ 17. The court noted that "some of the Plaintiffs are elderly and live in a small, isolated village in Northern New Mexico and at least one is primarily Spanish speaking and claimed that he could not have understood the publicity without an interpreter." *Id.* "As such, it remains an open question whether reasonably prudent persons in Plaintiffs' position would have realized that" they had a claim based on these newspaper articles. *Id.* ¶ 18 (emphasis added).

Plaintiffs' trespass and conversion claims, however, do not present a situation where the only way they could reasonably know a trespass or conversion occurred is through a newspaper article. Even assuming Plaintiffs could not have reasonably discovered the newspaper article within the statute of limitations period, Plaintiffs provide no reason to believe that the newspaper article provided their only avenue to discovery of their trespass and conversion claims. Their complaint addresses only the date Plaintiffs became aware *of the Jacobs article*, not the alleged trespass or conversion. And facts supporting the application of the discovery rule must be pled in the complaint. *Butler*, 2006-NMCA-084, ¶ 28; *see also Anderson Living Tr. v. WPX Energy Prod., LLC*, 27 F. Supp. 3d 1188, 1238 (D.N.M. 2014). The complaint does not contain any facts that would satisfy Plaintiffs' "burden of demonstrating that if [they] had diligently investigated the problem [they] would have been unable to discover the facts underlying the claim." *Butler*, 2006-NMCA-084, ¶ 28 (internal quotation marks omitted). The complaint gives no reason at all why the Plaintiffs were not able, with reasonable diligence, to discover the public newspaper

11

article *or* the trespass within the statute-of-limitations period. Accordingly, I recommend dismissing these claims without prejudice (Counts 5, 6, and 7).

        2.   <u>Defamation and invasion of privacy</u>

A different analysis applies to Counts 8 and 9, claims for defamation and invasion of privacy. "Claims based on injuries to a person's reputation fall under a three-year statute of limitations." *Vigil v. Taintor*, 2020-NMCA-037, ¶ 5, 472 P.3d 1220, 1223; NMSA § 37-1-8. This includes both defamation and invasion of privacy torts. *Vigil*, 2020-NMCA-037, ¶ 11. "The statute of limitations for a defamation claim is three years and begins running at the point of publication." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 8, 202 P.3d 126, 129. "Information is generally considered 'published' when it is made available to the public." *Id.* "New Mexico follows the single publication rule, which provides:

> No person shall have more than one cause of action for damages for libel or
> slander or invasion of privacy or any other tort founded upon any single
> publication or exhibition or utterance, such as any one edition of a newspaper or
> book or magazine or any one presentation to an audience or any one broadcast
> over radio or television or any one exhibition of a motion picture.

*Id.* (quoting NMSA § 41-7-1). New Mexico courts have also extended the rationale of this single publication rule to the question of when a claim accrues for purposes of the statute of limitations. The New Mexico Court of Appeals has clearly stated that under the single publication rule, "multiple disseminations of the same content give rise to only one cause of action, and the statute of limitations runs from the point at which the original dissemination occurred." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 9, 202 P.3d 126; *Vigil v. Taintor*, 2020-NMCA-037, ¶ 15.

In *Vigil v. Taintor*, for example, a company published a series of magnets, flasks, and cards that bore the plaintiff's picture and the slogan "I'm going to be the most popular girl in rehab!" 2020-NMCA-037, ¶ 2. These were first available to the public in 2010, but the plaintiff

did not see them until 2013, when her daughter purchased a flask and gave it to the plaintiff. *Id.*

The court applied the single publication rule to manufactured goods, explaining:

> manufactured goods can be mass-produced for public consumption, and retailers
> may sell them to consumers across broad geographic areas. Likewise, these goods
> may be bought and viewed by countless individuals for an indefinite amount of
> time after they were originally manufactured and sold to the public. Without the
> single publication rule, the sellers of these goods would be subject to a
> multiplicity of claims leading to potential harassment, excessive liability, and
> draining of judicial resources. The fact that Plaintiff's image was printed on flasks
> and magnets, rather than books or websites, does not reduce these concerns.

*Id.* ¶ 14 (citations and internal quotation marks omitted).

New Mexico has also applied the single publication rule to internet publications. *See*

*Woodhull*, 2009-NMCA-015, ¶ 10 (adopting the "nearly unanimous" rule concerning

"application of the single publication rule to the Internet").

> The single publication rule is designed to protect the defendants and the courts
> from a multiplicity of suits, an almost endless tolling of the statute of limitations,
> and diversity in applicable substantive law. Absent this rule, publishers and the
> mass media would be subject to a multiplicity of claims leading to potential
> harassment, excessive liability, and draining of judicial resources. As with
> traditional mass media, content on a public website is broadly available and easily
> reproduced. It may be viewed by literally millions in a broad geographic area for
> an indefinite time period. Thus, there is a similar if not greater need for the policy
> advanced by the single publication rule in the Internet realm.

*Id.* ¶ 11 (internal quotation marks, citations, and alterations omitted).

In this case, the Jacobs article was originally published on December 15, 2016. Compl.

Ex. 1, Doc. 1-1 at 1. Under *Woodhull* and *Vigil*, this first publication triggered the three-year

statute of limitations. Thus, the statute of limitations applicable to this claim expired before

Plaintiffs filed suit in 2021. Further publication of the same material in print or online does not

extend the statute of limitations. *Vigil*, 2020-NMCA-037, ¶ 15.

Nonetheless, even if a subsequent publication does not extend the statute of limitations,

Plaintiffs argue their inability to discover the defamation does. In other words, Plaintiffs argue

that the discovery rule as outlined in *Williams v. Stewart* should also apply to defamation or invasion of privacy claims. Defendants disagree, arguing that the single-publication rule forecloses such an argument. Doc. 30 at 14. Unfortunately, it appears that New Mexico has not addressed whether or how the discovery rule applies to defamation claims. In *Vigil v. Taintor*, for example, the court of appeals noted that the plaintiff argued for the application of the discovery rule, but the court did not address whether it applied because it found the plaintiff waived the argument. 2020-NMCA-037, ¶ 6 n.2.

Nonetheless, I predict that, for defamation and related claims, New Mexico would not adopt a wholesale version of the discovery rule as outlined in *Williams v. Stewart*. As Plaintiffs point out, Doc. 28 at 8 ¶ 15, some courts outside New Mexico have created a limited discovery-based exception for some defamation claims. However, this rule is not the same as the generous discovery rule described in *Williams.* It applies only in in defamation cases where publication was "secretive"—for example, a person's credit report.

Plaintiffs cite *Clark v. Airesearch Mfg. Co. of Ariz., Inc., a Div. of Garrett Grp.*, 138 Ariz. 240, 242 (Ct. App. 1983). *See* Doc. 38 at 8-9. This case hurts Plaintiffs more than it helps them. In *Clark*, the court reiterated the basic rule that "in defamation cases the cause of action accrues and the statute of limitations begins to run on the date of publication of the defamatory material." 138 Ariz. at 241. "Many cases that have considered whether failure to discover the defamation affects the running of the statute of limitations have held it does not." *Id.* at 241-42. The court then went on to consider a limited exception to this rule: "[T]here is a decided modern trend to apply the rule of discovery in a limited type of defamation cases—cases in which the alleged defamatory statements are published under circumstances in which they are likely to be kept secret from the injured party for a considerable time." *Id.* at 242. This exception included

14

credit reports, confidential business memoranda, and confidential personnel files. *Id.* The *Clark* court rejected application of this limited exception as applied to the defamation alleged in that case: verbal "defamatory remarks not made in an inherently secretive or confidential manner." *Id.* at 243. Moreover, although *Clark* did provide non-binding support for the notion that some version of the discovery rule should apply to some defamation fact patterns, application of the rule under *Clark* turns on the manner of publication, not the plaintiff's individual circumstances (such as imprisonment).

Plaintiffs also cite *Long v. Walt Disney Co*., 116 Cal. App. 4th 868, 872 (Cal. Ct. App. 2004) and *Shively v. Bozanich*, 31 Cal. 4th 1230, 1249, 80 P.3d 676, 687 (2003), for the propositions that "inherently undiscoverable," or "inherently unknowable" publications can trigger the discovery rule. Doc. 38 at 9. While this is true, it again hurts Plaintiffs more than it helps them: California has been extremely clear that this narrow version of the discovery rule does not apply to materials available to the public, no matter how small or limited the circulation. In *Hebrew Academy of San Francisco v. Goldman*, for example, the court applied this rule to a publication that was only available in certain university libraries. 42 Cal. 4th 883, 173 P.3d 1004 (2007). "The transcript at issue here was not published in an inherently secretive manner . . .; although not widely distributed, the transcript was available to the public." *Id.* at 894.

I predict New Mexico would, at most, adopt the secretive-publication rule, not invent a broad discovery rule covering all defamatory statements based on the plaintiff's individual circumstances. In *Mullin v. Washington Free Weekly, Inc*., the D.C. Court of Appeals described it as a "virtually unanimous rule" that for alleged defamation through a mass media outlet such as a book, magazine, newspaper, or online publication, the limitations period begins to run when the publication "is first generally available to the public." 785 A.2d 296, 298 n.2, 299 (D.C.

2001). This general approach to the limitations period for defamation is both virtually unanimous in other jurisdictions, and consistent with the single publication rule in this state's statute and as described in New Mexico case law. Plaintiffs have cited no case refusing to follow this approach in the context of publicly-available media. Plaintiffs have cited no case applying a discovery rule based on unique circumstances of the plaintiffs—rather than the circumstances of the publication—that prevented them from seeing the publicly-available media. I therefore recommend that the Court dismiss Counts 8 and 9 under the single-publication rule given New Mexico law's lack of support for a wholesale discovery rule in the defamation context.

      E.    <u>Sufficiency of the invasion-of-privacy allegations.</u>

Defendants also move to dismiss Count 9 for failure to state a claim. I analyze these arguments in the event that the Court does not accept my recommendation with respect to the statute of limitations. In Count 9, Plaintiffs allege invasion of privacy, right to publicity, and false light. "False light invasion of privacy" is a single tort under New Mexico law and occurs when an individual is "given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." *Moore v. Sun Pub. Corp.*, 1994-NMCA-104, ¶ 30, 118 N.M. 375, 383 (citation omitted). The complaint states perfunctorily that "Defendants also misrepresented Plaintiffs in a way that placed them in a false light" and refers to the Cannes photograph as "negative imagery," but does not explain what false characteristics are attributed to Plaintiffs from the Cannes photograph or the article.[6] Doc. 1 ¶ 79. Therefore, the false light invasion of privacy portion of Count 9 fails to state a claim.

---

[6] Again, although Plaintiffs have filed an affidavit that does address some of these deficiencies, the Court cannot consider their affidavit at the motion to dismiss stage.

So too does the "right to publicity" portion of Count 9. "Invasion of the 'right of publicity,' also known as 'appropriation,' consists of the exploitation of the plaintiff's name or likeness, usually for commercial gain." *Moore*, 1994-NMCA-104, ¶ 28 (stating the Restatement (Second) of Torts definition). However, "a newspaper, although it is not a philanthropic institution, does not become liable [for appropriation] to every person whose name or likeness it publishes." *Showler v. Harper's Mag. Found.*, 222 F. App'x 755, 763 (10th Cir. 2007) (addressing the Restatement (Second) of Torts definition). *Showler* involved photographs of a deceased sergeant's open casket at his funeral, which Harper's Magazine allegedly published. *Id.* at 758. The court found that the magazine was "not liable under an appropriation theory simply because it sought to make a profit via the circulation of its magazine when it published" the photo essay in question. *Id.* at 763. Although this case is unpublished, it is analogous and persuasive.

In their response, Plaintiffs clarify that they are also bringing claims for publication of private facts and intrusion upon seclusion in Count 9. Doc. 38 ¶¶ 58-59. Publication of private facts involves the disclosure of true but personal facts, such as a person's health or sexual history, when there is no legitimate public interest in that information and disclosure would be "objectionable to a reasonable person." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1218 (10th Cir. 2007) (citations omitted). Here, Plaintiffs discuss their arrest and indictment, which led to the Jacobs article. Doc. 1 ¶¶ 22-23. Local arrests and indictments are public information, not private facts. *See Archuleta v. City of Roswell*, 898 F. Supp. 2d 1240, 1256 (D.N.M. 2012). Therefore, I recommend that the Court dismiss the claim for publication of private facts.

Intrusion upon seclusion involves an intrusion, "highly offensive to a reasonable person" and usually "a physical invasion into someone's space," such as "insist[ing] over the plaintiff's

17

objection in entering the home." *Alvarado,* 493 F.3d at 1217 (citations omitted). The complaint alleges a trespass—a physical invasion—into Plaintiffs' home, which, if true, would be highly offensive to a reasonable person. Defendants argue that Plaintiffs have not argued that their privacy faced intrusion, but merely their home. Doc. 44 at 11. However, unauthorized intrusion into a person's private concerns also qualifies as intrusion upon seclusion, and Plaintiffs have alleged that Defendants interfered with their photograph, business whiteboard, and United States Marshal Service badge. Doc. 1 ¶ 38; *see* Restatement (Second) of Torts § 652(B) (providing examples of opening private mail, searching a person's safe or wallet, or examining a person's private bank account). Because Plaintiffs' allegations are taken as true at this stage, if Count 9 survives the Court's statute of limitation analysis, I recommend finding that this part of Count 9 (intrusion upon seclusion) states a claim.

In summary, for Counts 5 through 9, I recommend dismissal on the basis of the statutes of limitations. In addition, as currently pled, I recommend finding that three of the four invasion of privacy claims in Count 9 are subject to dismissal for failure to state a claim; only the intrusion upon seclusion claim was sufficiently pled. If the Court does not agree with my recommendation to dismiss Count 8 (defamation) on the basis of the statute of limitations, that claim should stand as Defendants do not make a failure-to-state-a-claim argument.

F.     Negligence

1.     Count 10: Negligence Per Se

Although Plaintiffs stylize Count 10 as "Negligence Per Se," the actual allegations in Count 10 list the elements of negligence. Doc. 1 ¶ 84. Defendants argue that these allegations simply repeat Plaintiffs' defamation claim. Doc. 30 at 18-19. Plaintiffs argue in response that they do state a claim for negligence per se, not ordinary negligence, because Defendants Perez

and Thompson "were private citizens duty bound not to criminally trespass on Plaintiffs' real property." Doc. 38 ¶ 63.

Plaintiffs' complaint baldly lists the elements of negligence and explains that "Defendants were negligent in publishing the Jacobs article knowing that Carroll's interview was single-sided hearsay yet published as fact." Doc. 1 ¶ 85. These assertions are little more than a "formulaic recitation" of the elements of negligence and therefore "will not do." *See Twombly*, 550 U.S. at 555. Even if the Court considers Plaintiffs' belated argument that the alleged trespass supports a negligence per se claim, "[n]ot every statutory violation gives support to a claim of negligence *per se*." *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 857 F. Supp. 838, 848 (D.N.M. 1994) (citation omitted). As Defendants observe, the complaint references NMSA § 30-14-1(A) (criminal trespass), but not in the context of negligence per se. *See* Doc. 44 at 11-12. The complaint does not indicate how, if at all, this violation gives rise to a negligence per se claim—for example, by explaining how the statutory duty to refrain from criminal trespass is "distinguishable from the ordinary standard of care." *See Wirth v. Sun Healthcare Grp., Inc.*, 2017-NMCA-007, ¶ 23, 389 P.3d 295, 301 (citation omitted). I therefore recommend that the Court dismiss this Count.

### 2.  Count 11: Negligent Infliction of Emotional Distress ("NIED")

Defendants argue that Plaintiffs' claim for NIED must fail because New Mexico only recognizes this tort in the context of a bystander who witnesses the serious injury or death of a family member, circumstances Plaintiffs do not allege in this case. Doc. 30 at 19. Defendants are correct. "NIED is an extremely narrow tort that compensates a bystander who has suffered severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member." *Fernandez v. Walgreen Hastings Co.*, 1998-NMSC-039, ¶ 6, 126 N.M. 263, 266. Plaintiffs cite to cases that allow damages for emotional distress or loss of

enjoyment of life, *see* Doc. 38 ¶¶ 65-66, but these are categories of damages, not claims upon which a party may prevail. Because Plaintiffs do not allege that they witnessed the serious injury or death of a family member, their claim for NIED is deficient, and I recommend that the Court dismiss it.

       G.    <u>Claims Against Individual Defendants</u>

Alternatively, if the Court disagrees with my recommendations above, I address Defendants' request to dismiss various claims against various individuals for which sufficient facts have not been pled. I recommend only dismissal of Count 9 against Defendants Lang and Moses due to failure to plead particular facts against these defendants. The other counts against all individual defendants, while sparse, do contain enough information to survive a motion to dismiss given the less stringent standard for pro se litigants. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Defendants seek to dismiss all eleven causes of action against Defendants Lang and Moses because the complaint does not allege particular acts or omissions by these individuals; it simply mentions that Lang is the *Albuquerque Journal's* publisher and Moses is the editor-in-chief who approved the Jacobs article and its photographs before publication. Doc. 30 at 21. Publishers and editors are common defamation plaintiffs and may also be held liable for copyright infringement. *See, e.g., Calder v. Jones*, 465 U.S. 783 (1984) (libel case against writer and editor of article); *Gertz v. Welch*, 418 U.S. 323 (1974) (libel case against magazine publisher); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340 (1991) (copyright infringement action against publisher); 17 U.S.C. § 501(a) ("[a]nyone" who violates exclusive rights of copyright owner has committed copyright infringement). By alleging that Lang is the *Albuquerque Journal's* publisher and that Plaintiffs reached out to Lang to address the alleged theft (Doc. 1 ¶ 28), the complaint allows for the plausible inference that Lang published the

Jacobs article. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (at motion to dismiss stage, court draws "all reasonable inferences" in Plaintiff's favor). Similarly, the complaint states that Moses approved the article. Doc. 1 ¶ 25. Therefore, I do not recommend dismissing Count 1 (copyright infringement) or Count 8 (defamation) as to Defendants Lang and Moses on the basis that there are no allegations against these individuals. However, Count 9 (intrusion upon seclusion) does not appear to apply to these defendants, who are not alleged to have intruded upon anyone's seclusion.

Defendants seek to dismiss Counts 1 through 4 against Defendant Perez. As to Count 1, because Perez is alleged to be an author of the article that used the Cannes photograph—the source of the alleged copyright dispute—I do not recommend dismissing Count 1 at this time. I have already recommended dismissal of Counts 2-4 for other reasons. In the event that the Court does not accept my recommendation above, alternatively I analyze the applicability of these counts to Perez. As to Count 2, contributory copyright infringement, Perez is an alleged author of the Jacobs article. However, the complaint makes no allegations indicating that Perez knew about the other news sources that used the copyrighted Cannes photograph, which is a key element of contributory copyright infringement. Similarly, as to Count 3, copyright management infringement, the complaint does not allege that Perez placed the purportedly incorrect copyright language in the Jacobs article with the intent to induce infringement. I therefore recommend dismissing Counts 2 and 3 against Perez. Because Count 4 does not name a cause of action, I also recommend dismissing this Count against Perez.

Defendants seek to dismiss Counts 8 and 11 against Defendant Thompson, the photographer. As to Count 8, Plaintiffs allege that the photographs in the Jacobs article are defamatory, *see* Doc. 1 ¶¶ 27, 42, so I do not recommend dismissing Count 8 against Thompson

on the basis that there are no allegations against this defendant. I have already recommended dismissal of Count 11 because under New Mexico law, NIED is a tort available only to bystanders who witness traumatic events affecting their family members. If the Court rejects this reasoning, I nevertheless recommend dismissal of Count 11 against Thompson because the complaint contains no allegation that he caused Plaintiffs to witness a traumatic event affecting their family members.

Defendants seek to dismiss Counts 1-7 and 11 against Defendant Kaplan. As to Count 1, because Kaplan is alleged to be an author of the article that used the Cannes photograph—the source of the alleged copyright dispute—I do not recommend dismissing Count 1 at this time. I have already recommended dismissal of Counts 2-7 and 11, but in the event the Court does not accept my recommendation above, I analyze these claims as they pertain to Kaplan. Similar to my above analysis regarding Defendant Perez, Counts 2 and 3 lack allegations about Kaplan's knowledge and intent, respectively. Plaintiffs themselves seek the dismissal of Counts 4 and 7 against Kaplan because they are "irrelevant to her role." Doc. 38 ¶ 76. Plaintiffs do not bring Count 5 against Kaplan. Doc. 1 ¶ 63. As to Count 6, trespass to chattel, the complaint is contradictory. Plaintiffs initially claim only that Perez and Thompson "did willfully trespass on Plaintiffs' chattel" and make no assertions regarding the other defendants, Doc. 1 ¶ 38, but they later bring their trespass to chattel claim against all Defendants, *id.* ¶ 66. The complaint alleges no actions on Kaplan's part that would constitute trespass to chattel. Finally, the complaint makes no allegation that Kaplan caused Plaintiffs to witness a traumatic event affecting their family members. Accordingly, I recommend dismissing Counts 2-7 and 11 against Kaplan.

Finally, I note that no party has addressed whether amendment would be futile. *Wilson v. Reid*, 781 F. App'x 789, 793 (10th Cir. 2019) ("Because Mr. Wilson was acting pro se, dismissal

with prejudice was appropriate only if amendment would have been futile."). I therefore recommend all dismissals be without prejudice and further recommend that Plaintiffs be permitted the opportunity to file a motion for leave to file an amended complaint.

## CONCLUSION

To summarize, I recommend denying Plaintiffs' motion for a preliminary injunction. I also recommend granting Defendants' Motion to Dismiss Counts 2-11. I recommend dismissing these counts without prejudice. This recommendation leaves intact Count 1 against all defendants except for the claim of statutory damages and attorney's fees.

UNITED STATES MAGISTRATE JUDGE

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.