## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MICHAEL JACOBS and
RUBY HANDLER JACOBS,

      Plaintiffs,

v.                                             Case No. 1:21-cv-00690-MV-SCY

THE JOURNAL PUBLISHING COMPANY
d/b/a/ THE ALBUQUERQUE JOURNAL,
WILLIAM P. LANG, NICHOLE PEREZ,
JAMES THOMPSON, ELISE KAPLAN,
KAREN MOSES, and DOES 1 THROUGH 20,
INDIVIDUALLY OR JOINTLY AND SEVERALLY,

      Defendants.

## ORDER OVERRULING PLAINTIFFS' OBJECTIONS AND ADOPTING PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on (i) Plaintiffs' Motion for Copyright Impoundment and Temporary Restraining Order or Preliminary Injunction (Doc. 2) and (ii) Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 30). Plaintiffs are proceeding pro se. In his Proposed Findings and Recommended Disposition ("PFRD"), filed May 18, 2022, United States Magistrate Judge Steven C. Yarbrough recommended that the Court deny Plaintiffs' motion for a preliminary injunction and grant Defendants' motion to dismiss. Doc. 49. On May 31, 2022, Plaintiffs timely filed their Objection in Part and Approval in Part For Proposed Findings and Recommended Disposition (Doc. 50). Plaintiffs' Objections are now before the Court.

The Court has considered Plaintiffs' motion seeking a preliminary injunction (Doc. 2), Defendants' response (Doc. 29), Plaintiffs' reply (Doc. 37), Defendants' motion to dismiss (Doc. 30), Plaintiffs' response (Doc. 38), Defendants' reply (Doc. 44), the Magistrate Judge's PFRD

(Doc. 49), Plaintiffs' objections (Doc. 50), and Defendants' response to those objections (Doc. 51), in light of the legal standards described below and has conducted a de novo review. Based on the Court's review, the Court finds that Plaintiffs' objections to the Magistrate Judge's PFRD are not well-taken and therefore **DENIES** Plaintiffs' motion (Doc. 2) and **GRANTS** Defendants' motion (Doc. 30).

## LEGAL STANDARD

District courts may refer dispositive motions to a magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). "Within 14 days after being served with a copy of the [magistrate judge's] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). When resolving objections to a magistrate judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Further, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit,

theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

When plaintiffs proceed pro se, the court generally construes their pleadings liberally, holding them to a less stringent standard than those a party represented by counsel files. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In so doing, the court makes allowance for pro se litigants' "failure to cite proper legal authority, [their] confusion of various legal theories, [their] poor syntax and sentence construction, or [their] unfamiliarity with pleading requirements." *Id.* The court will not, however, construct arguments or search the record for the pro se party. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Issues will be waived if the pro se party's briefing "consists of mere conclusory allegations with no citations to the record or any legal authority for support." *Id.*

## BACKGROUND

On December 11, 2016, Plaintiffs were arrested for white collar crimes. Doc. 1 at 4 ¶ 22. A few days later, on December 15, 2016, the Albuquerque Journal published an online article (the "Jacobs article") discussing Plaintiffs' indictment and details of the alleged crimes. *Id.* at 5 ¶ 23. Plaintiffs were in custody at the time, but they discovered the article on September 28, 2019, months after their July 2019 release. Doc. 38 at 8 ¶ 14.

Plaintiffs objected to several aspects of the article, especially a photograph it contained (the "Cannes photograph") depicting Plaintiffs standing in front of two yachts. Plaintiffs claim that Defendants Nichole Perez and James Thompson trespassed onto their property and stole a physical copy of this photograph for use in the article. Doc. 1 at 6 ¶ 27. They also claim that the Albuquerque Journal's use of the Cannes photograph was a copyright violation, that use of the photo by other

3

sources constituted further violations, and that the photograph's context in the article placed Plaintiffs in a false light. *Id.* at 6-7 ¶¶ 30-31.

Plaintiffs sued Defendants—the Journal Publishing Company doing business as the Albuquerque Journal and various newspaper employees—alleging the following:[1]

Count 1: Copyright Infringement Per Se
- Against all defendants
Count 2: Contributory Copyright Infringement
- Against Defendants Albuquerque Journal, Lang, Thompson, and Moses
Count 3: Copyright Management Infringement
- Against Defendants Albuquerque Journal, Lang, Thompson, and Moses
Count 5: Trespass Per Se
- Against Defendants Perez and Thompson
Count 6: Trespass of Chattel Per Se
- Against all defendants
Count 7: Conversion Per Se
- Against all defendants
Count 8: Defamation Per Se
- Against all defendants
Count 9: Invasion of Privacy, Right to Publicity and False Light Per Se
- Against Defendants Albuquerque Journal, Perez, Thompson, and Kaplan
Count 10: Negligence Per Se
- Against all defendants

Plaintiffs filed for a preliminary injunction to remove the Jacobs article from all websites within the Albuquerque Journal's control, notify all other sites using the allegedly stolen image that the Albuquerque Journal did not have copyright and request that those sites remove the image, to maintain all financial records pertaining to the Cannes photograph and other unauthorized photographs, to halt any ongoing or upcoming activities related to the Cannes photograph, and to provide Plaintiffs with documentary evidence that they have complied with these requirements. Doc. 2 at 10. Defendants, for their part, filed a motion to dismiss Counts 2-9. Doc. 30. Judge

---

[1] The Court has updated this list in accordance with Plaintiffs' objections to the PFRD, which include various claims they agree should be dismissed. Doc. 50 at 9 ¶¶ 25-27. Plaintiffs have withdrawn Counts 4 and 11. *Id.* at 3 ¶ 7.

Yarbrough considered these motions, their responses, and their replies and provided a PFRD (Doc. 49), to which Plaintiffs have objected (Doc. 50). The Court examines the objections below.

## DISCUSSION

Because the PFRD analyzes two different motions—Plaintiffs' motion for a preliminary injunction and Defendants' motion to dismiss for failure to state a claim—the Court divides its analysis to avoid confusion.

### I.    Motion for preliminary injunction

Plaintiffs object to the PFRD's recommendation against a preliminary injunction in this case. Doc. 50 at 4-6. The PFRD grounds its decision in the element of irreparable harm, which the Magistrate Judge found not present here. Doc. 49 at 4-5. Plaintiffs argue that reputational damage and likelihood of confusion can constitute irreparable injury. Doc. 50 at 5 ¶¶ 12-13.

Tenth Circuit case law is clear that reputational harm is not inherently irreparable. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (plaintiff must demonstrate that reputational damage cannot be compensated after the fact by damages); *Hunter v. Hirsig*, 614 F. App'x 960, 963 (10th Cir. 2015) ("[a]s a matter of well-settled law, allegations of reputational injury *do not* rise to the level of irreparable harm that could justify injunctive relief" (emphasis in original)). Plaintiffs' citations of Third Circuit and district court cases do not change that. *See* Doc. 50 at 5 ¶¶ 12-13.

Plaintiffs also cite *GTE Corp. v. Williams*, 731 F.2d 676 (10th Cir. 1984), in support of the proposition that reputational damage and likelihood of confusion can constitute irreparable injury, but this argument is misplaced. While *GTE Corp.* holds that copyright infringement can itself be a form of irreparable harm absent evidence of lost sales or other concrete economic damages, *id.* at 678, more recent precedent clarifies this standard. As the PFRD explains, a

rebuttable presumption of irreparable harm now exists in trademark infringement cases and may apply to the present case. Doc. 49 at 3 n.1. This presumption is consistent with the approach that the Tenth Circuit took in *GTE Corp.*; the court recognized that copyright infringement could constitute irreparable harm, but it found that no such harm occurred in that case because of the nearly yearlong delay in filing suit. 731 F.2d at 678. That is, other factors made it clear that the possibility of irreparable harm was not a reality in that case. Similarly, in the present case, Defendants rebut any presumption of irreparable harm by pointing out the 22-month delay between when Plaintiffs allege that they discovered the Jacobs article and the time that they filed suit. *See* Doc. 29 at 11. Defendants also correctly note that the reputational harms that Plaintiffs allege mostly take the form of lost business opportunities, which are compensable, and that Plaintiffs give no indication that further harm will occur in the future. *Id.* at 10.

For these reasons, if any presumption of irreparable harm applies for the alleged copyright violations in this case, Defendants have rebutted it. Plaintiffs therefore cannot meet the "irreparable harm" element necessary for a preliminary injunction.

## II.   Motion to dismiss

### A.   Copyright claims

Although Plaintiffs discuss this topic in the section devoted to their trespass claims, they object to the PFRD's analysis of their contributory copyright infringement claim (Count 2). Doc. 50 at 8 ¶ 23. The Magistrate Judge recommended dismissal of Count 2 because the complaint did not contain assertions that Defendants caused the third-party publishers to unlawfully publish the Cannes photograph, but simply alleged that the third-party publishers had credited the Albuquerque Journal as the source of the photograph. Doc. 49 at 6-7. Plaintiffs argue that the complaint states the following: "Moreover, Plaintiff Jacobs has also discovered that the Journal

is utilizing the services of a California photo agency, Zuma Press ("Zuma"), who ironically is Plaintiff Jacobs' agent, to distribute the Cannes photograph worldwide along with other unauthorized photographs taken at Plaintiffs' home." Doc. 50 at 8 ¶ 23 (citing Doc. 1 ¶ 31). This allegation, they assert, is sufficient to establish that the Journal sent the Cannes photograph and other unauthorized photographs from their home to Zuma. *Id.*

However, this assertion still does not suffice to connect the Albuquerque Journal to the third-party publishers. The complaint does not claim, for example, that the *Singapore Straights Times*, the Chinese Malaysian newspaper, or the Sri Lanka Royal Turf Club Facebook site received the Cannes photograph from Zuma (as opposed to taking it directly from the Albuquerque Journal without the Journal's knowledge). The Albuquerque Journal's alleged provision of the Cannes photograph to an agent does not connect the Journal to the purportedly illicit publications in the *Singapore Straights Times*, the Chinese Malaysian newspaper, or the Sri Lanka Royal Turf Club Facebook site.

Plaintiffs also allege that the Cannes photograph appeared on the Imago-Images website, a German page. Doc. 1 at 7 ¶ 31. They claim that Imago is a partner of Zuma. *Id.* The allegation that the Journal provided the Cannes photograph to Zuma and that Zuma's partner published it online in violation of Plaintiffs' copyright, if true, is a closer case. Contributory copyright infringement may plausibly occur when, for example, a university official confiscates a graduate student's copyrighted dissertation and provides it to the university library, or when a file-sharing service knows that its user base transfers copyrighted files to each other and encourages infringement through its marketing and its failure to make any effort to filter out copyrighted files. *See Diversey v. Schmidly*, 738 F.3d 1196 (10th Cir. 2013); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). These individuals or entities knowingly cause others

to engage in copyright infringement or assist them in doing so. In this case, however, Defendants argue that there is no allegation that they knew of the infringing activities of third parties such as Imago. Doc. 44 at 4. Contributory liability attaches only if the defendant knows of the direct infringement. *Diversey*, 738 F.3d at 1204 (10th Cir. 2013). The complaint here does not make such an allegation. It alleges in conclusory fashion that Defendants' contributory copyright infringement was "willful, intentional and in disregard of Plaintiff Jacobs' rights", but conclusory allegations are insufficient to establish a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Otherwise, the complaint merely states that "Defendants chose to steal a photograph that would have a copyright owner other than the Journal" and that Plaintiff Jacobs had copyrighted the photograph. Doc. 1 at 6-7 ¶¶ 29, 33. Neither of these statements actually allege that Defendants knew third parties were infringing Plaintiff's copyright. This failure to plead facts that would support knowledge of the copyright is fatal to Plaintiffs' contributory copyright infringement claim.

### B. Statute of limitations

Regarding their trespass and conversion claims (Counts 5-7), Plaintiffs argue that the discovery rule applies because they did not discover the trespass or conversion until they found the Jacobs article. Doc. 50 at 7-8 ¶¶ 19-22. However, this argument does not address the reason that the Magistrate Judge granted dismissal based on the statute of limitations for these claims: the *complaint* does not contain any facts that demonstrate their inability to discover the trespass or conversion. For the discovery rule to come into play, the complaint must contain sufficient facts to support it. *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 26, 140 N.M. 111, 117-18. Because the complaint does not include facts to support the assertion that the only

way Plaintiffs could have discovered the trespass or conversion was through reading the Jacobs article, Plaintiffs' argument fails.

The Magistrate Judge concluded that a different statute of limitation analysis applies to invasion-of-privacy claims than that which applies to trespass. Doc. 49 at 12. When it came to trespass, the Magistrate Judge concluded that Plaintiffs' complaint did not contain enough facts supporting application of the discovery rule to Plaintiffs' trespass claim. *Id.* at 10-12. When it came to invasion of privacy, the Magistrate Judge concluded that a different statute of limitations and a different accrual rule applied: a publication-based rule in the defamation context. *Id.* at 12-16.

Plaintiffs object to the conclusion that Count 9 is based on a publication. Doc. 50 at 3 ¶ 7.[2] To the extent that Plaintiffs allege an invasion of privacy claim in Count 9 that is not tethered to publication of private facts but instead concerns the invasion of privacy caused by two of the defendants intruding into Plaintiffs' home and photographing private areas, Plaintiffs' claim is like that of trespass. If properly pled in the complaint, an argument could be made that New Mexico courts would apply the discovery rule to a plaintiff's invasion of privacy claim when that claim is based on the unsanctioned entering of a home rather than on the unsanctioned publication of a private fact. But Plaintiffs do not cite any authority applying the discovery rule to invasion of privacy claims in New Mexico, and the Court has not found any. The Court declines to reach this question at this time, because like the trespass claim, the Court concludes

---

[2] Although the Magistrate Judge broadly read Plaintiffs' Count 9 invasion of privacy claim as bringing invasion of privacy claims based on the publication of private facts, Doc. 49 at 17, Plaintiffs' objections indicate that they are not bringing such claims. Specifically, Plaintiffs state that Count 9 "occurred prior to the original publication, not subject to the USPR [Uniform Single Publication Rule] and [is] subject to the provisions of Discovery Rule [sic]." Doc. 50 at 3 ¶ 7. Even if Plaintiffs did intend to bring publication-based claims in Count 9, the Court, like the Magistrate Judge, would reject them as time-barred under the single-publication rule.

that, as currently pled, Plaintiffs' complaint lacks allegations that would support a finding that Plaintiffs could not have discovered that two defendants allegedly entered and stole things from their home before the Jacobs article was published. Thus, the result of Plaintiffs' invasion of privacy claim is the same for Plaintiffs' trespass claim, and the same as the Magistrate Judge recommended:  the Court dismisses this claim without prejudice.

Therefore, Plaintiffs' objections to the PFRD regarding its analysis of the statutes of limitations are overruled.

## CONCLUSION

Following its *de novo* review, the Court agrees with the Magistrate Judge's recommendations. Accordingly, the Court ADOPTS the Magistrate Judge's PFRD (Doc. 49) and OVERRULES Plaintiff's Objections (Doc. 50). The Court notes that Defendants did not object to the part of the PFRD that recommended dismissal without prejudice and that Plaintiffs should be permitted an opportunity to file an amended complaint.

**IT IS THEREFORE ORDERED** that Plaintiffs' request for a preliminary injunction (Doc. 2) is **DENIED**. Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 30) is **GRANTED**. Plaintiffs' claim for statutory damages and attorney's fees in Count 1 and Counts 2 through 9 of the Complaint are **DISMISSED** without prejudice. Plaintiffs shall file a motion to amend the complaint within **30 days** of the entry of this Order, or the counts will remain dismissed.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE