IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL JACOBS and
RUBY HANDLER JACOBS,

      Plaintiffs,

      v.                                            Civ. No. 21-690 MV/SCY

THE JOURNAL PUBLISHING COMPANY
d/b/a THE ALBUQUERQUE JOURNAL;
WILLIAM P. LANG; NICOLE PEREZ;
JAMES THOMPSON; ELISE KAPLAN;
KAREN MOSES; DEAN HANSON; KENT
WALZ; MORGAN PETROSKI; and DOES 1
THROUGH 20; INDIVIDUALLY OR
JOINTLY and SEVERALLY,

      Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART
### MOTION FOR PROTECTIVE ORDER

Defendants Journal Publishing Co. d/b/a Albuquerque Journal and William P. Lang move for a protective order from Plaintiffs' notice of deposition of Defendant Lang. Doc. 135. Defendants first move for an order protecting Lang from being deposed at all. They argue that Lang's deposition would be an impermissible apex deposition because he is the publisher of the Albuquerque Journal and has no personal knowledge of the events of this case. In the alternative, Defendants argue that the Court: (1) should protect Lang from the duces tecum portion of his subpoena by not requiring him to bring documents listed in the subpoena to his deposition; (2) make clear that that Lang's deposition is not a Rule 30(b)(6) deposition, that Lang is relieved of the burden of having to prepare for such a deposition, and that his testimony will not be binding on Journal Publishing Company in the manner of a Rule 30(b)(6) deposition. For their part, Plaintiffs argue that, given his role as Publisher, Lang is likely to have personal knowledge of these events, that they have the right to question him accordingly, and that Lang's corporate

knowledge is relevant to this case. The Court concludes that Plaintiffs should be able to conduct a short deposition of Lang. But because Lang is not a Rule 30(b)(6) witness and Plaintiffs' summary of topics they want to question Lang about indicate that Plaintiffs intend to treat Lang as a Rule 30(b)(6) witness, the Court will grant Defendants' alternative request for relief.

## BACKGROUND

After Plaintiffs' indictment for white collar crimes, the Albuquerque Journal published an online article about the events (the "Jacobs article"). Plaintiffs allege that the material in the article was defamatory and placed them in a false light. Included in this article is a photograph that depicts Plaintiffs in front of two yachts in Cannes (the "Cannes photograph"). Plaintiffs claim that this copyrighted photograph was stolen from a frame in their home after Defendants Nichole Perez and James Thompson trespassed onto Plaintiffs' property. Plaintiffs filed suit against the Journal Publishing Company, doing business as the Albuquerque Journal, as well as several newspaper employees, including William P. Lang.

Plaintiffs served a notice of deposition on Lang on May 21, 2024. Doc. 135-1. The deposition notice stated, "Deponent shall appear with the knowledge and ability to testify regarding the topics, not limited to, described in the attached 'Schedule A.'" *Id.* at 1. The attachment, in turn, included a lengthy list of topics related to legal, institutional, and industry knowledge. These topics are:

>1. Knowledge concerning your right and ability to correct infringing conduct as to what is published in the Journal.
>
>2. Knowledge of any and all documents setting forth any policies, procedures, guidelines, recommendations, or directives regarding the editorial operation of the Journal.
>
>3. Knowledge of all documents, books, reports, manuals, policies, and memoranda setting forth Journal's Code of ethics[.]

4. Knowledge of all memoranda, policies, procedures, or correspondence given or sent to journal employees about copyright.

5. Knowledge of any Journal employee handbook that was in effect at the time of the publication of the Cannes photograph and the Jacobs Article.

6. Knowledge of the New Mexico trespass law.

7. Knowledge of the Zuma Press financial contract and historical records.

8. Knowledge of selling photographs to third parties and the financial records.

9. Knowledge that the Cannes photograph had any direct relationship to the accusations Plaintiffs faced in their Indictment.

10. Knowledge of your permission's department who neither sought nor verified the ownership of the Cannes photograph.

11. Knowledge of the Plaintiffs' December 14, 2019 takedown notice and demand letter which you received shortly thereafter.

12. Knowledge of communications with anyone about the takedown notice and demand letter.

13. Knowledge of the continued publication of the Cannes photograph after receiving the takedown notice and demand letter.

14. Knowledge of advertisements in the Journal, policy and the financial interest of both the Journal and Journal Publishing Company.

15. Knowledge of the practice in the newspaper business to place stories, images and headlines above the fold as an enticement for people to purchase the newspaper.

16. Knowledge of metadata and how it is attached to a digital image.

17. Knowledge of the Journal as copyright owner in the metadata of the Cannes photograph.

18. Knowledge of Copyright Management Information.

19. Knowledge of why an investigation of the Cannes photograph usage did not occur after receiving the takedown and demand letter.

20. Knowledge of the First Amendment newsgathering privilege.

21. Knowledge of the Cannes photograph currently remaining on the Journal's Facebook website.

22. Knowledge of the Fair Use Doctrine as it may relate to the Cannes photograph.

23. Knowl[e]dge about the ownership of the Cannes photograph.

24. Know[le]dge of your Executive Risk Indemnity, Inc. Insurance Declaration, Section II.

25. Knowledge of any Journal ethics violations or breaches since 2015.

26. Knowledge of training programs for Journal employees.

27. Knowledge of all training or instructional videotapes, CDs or DVDs used by any Defendant.

28. Knowledge of the New Mexico Discovery Rule.

29. Knowledge of all correspondence, writings and/or documents between you and any other individual, whether they are a Journal employee or a non-Journal person, regarding the Cannes photograph.

30. Knowledge of all documents reflecting any background check performed on Defendants Hanson, Thompson, Moses, Walz, Kaplan and Perez with regard to their employment history or job references, including letters of reference.

31. Knowledge of all phone call logs, or correspondence reflecting complaints or criticisms of any kind, concerning any co-Defendants, received by you from any source[.]

32. Knowledge of all documents reflecting any background check performed on all co-Defendants with regard to their criminal history.

33. Knowledge of the entire personnel file of Defendants Hanson, Thompson, Moses, Kaplan, Walz and Perez.

34. Knowledge of all evaluations or criticism of the job performance of Defendants Hanson, Thompson, Moses, Walz, Kaplan and Perez, including but not limited to annual evaluations, interim evaluations, or specific incidents that gave rise to an evaluation or criticism.

35. Knowledge of all documents concerning any bills, attorney's fees, court costs, expenses, expert fees, formal or informal, that reduce the amount of liability insurance available to cover the Plaintiff.

*Id.* at 3-4.

4

The deposition notice also included a request that Lang produce documents pertaining to another lengthy set of topics:

1. Any and all documents and tangible items mentioned in Schedule A.

2. All correspondence or other documents relating to communications to or from you, your successors, your predecessors, your agent(s), your employees, and/or your representative(s), relating to the creation, production, copyright usage, distribution and/or exploitation in any form or format of any and all versions of the image entitled "Cannes photograph."

3. All documents relevant or relating to, your licensing, assignment, transfer, or conveyance of any rights in the Cannes photograph.

4. Any and all documents and other writings that refer or relate to the Journal's employee manuals, memoranda, guidelines, instructions, codes of ethics to include your production of printed and electronic versions of manuals, booklets, and brochures setting forth your policies, procedures or practices relating to conduct as employees of the Journal.

5. Perez's written transcription of her interview with Carroll.

6. An email from Elise Kaplan to Nicole Perez dated December 15, 2016

7. Defendant Lang's current biography and resume.

8. Co-Defendants' most recent biographies and resumes held by the Journal.

9. Any and all tangible evidence of any nature including emails, telephone and cell phone records, including call logs and data usage logs, detective reports, photographs, video tape recordings or voice recordings which relate in any manner to the Jacobses and the Complaint.

10. Statements made by any of the co-defendants with relation to Plaintiffs' Complaint.

11. Any of your invoices, logs, sales receipts, accounting records, accounts receivable concerning the Journal websites, print edition and other websites, with regard to the Jacobs Article, Cannes photograph and advertisers since December 15, 2016.

12. Any and all documents including placement costs and Journal income regarding the advertisements of Shoes on a Shoestring and "Rogue One" which appeared on the front page of the Journal print edition on December 16, 2016.

> 13. Any and all documents including placement costs and Journal income regarding the advertisement of FastProstateFix.com (See Doc. 37-2, Exh. B) appearing on the Journal's website on October 13, 2021.
>
> 14. Any and all documents including placement costs and Journal income, and production of each Internet page of the Jacobs Article and Cannes photograph where a different advertiser is shown, regarding any advertisement appearing on the Journal's website and its Facebook page during the period December 15, 2016 to present.
>
> 15. Any and all documents or contracts pertaining to the Journal's claimed creation, copyright and distribution of the Cannes photograph.
>
> 16. Please provide, in flash drive format and as editable JPG files, the full set (take) of unedited Thompson's digital images photographed during the entirety of his Jacobs Article assignment at or on the Jacobses residence. Please provide an entire set of Thompson's edited images, including the Cannes photograph, with IPTC metadata intact.

*Id.* at 5-6.

In Defendants' motion for a protective order, they attach a declaration from Lang that states that he is the Publisher of the Albuquerque Journal and President of a related company, Albuquerque Publishing Company. Doc. 135-2 ¶ 1. It further states:

> 3. At the time of the publication of the article, I very rarely had any personal involvement with the daily content of the *Journal*. The *Journal* had an editorial department that was responsible for newsgathering and editing, as well as deciding what articles, photographs, headlines, captions, and other editorial content would appear in the paper. The *Journal* also had a business department, under the authority of Albuquerque Publishing Company, that was responsible for any advertising that appeared in the *Journal*.
>
> 4. I had no involvement with this article, nor do I have any knowledge regarding the article other than what appears in the article itself. I was not involved, and do not have knowledge of, how the Journal decided to report on the subject of the article; the assignment of reporters or photographers to the article; instructions given to the reporters or photographers; the actions taken by the reporters or photographers in reporting on the story; the editing of the article; what photographs, headlines or captions appeared with the article; determining where the article would be located in either the print or online editions of the *Journal*; the placement of "Copyright © 2016 Albuquerque Journal" alongside the article or the photographs; the continued publication of any of the article, or the photographs accompanying the article on the *Journal*'s website or on its Facebook page; or anything else related to the article.

6

> 5. I also have no knowledge regarding whether photographs that were taken by *Journal* photographers in connection with this article were distributed or sold to any other person or entity, or whether these photographs were published anywhere outside of the *Journal*. I also do not know whether the *Journal* received any money from any distribution or sale of these photographs to others, or how any other person or entity obtained those photographs. I also have no knowledge regarding placement or alteration of metadata or copyright management information on the photographs or the details of the *Journal*'s business relationship with Zuma Press. Information about all of those topics is available from other employees of the newspaper.
>
> 6. In regard to a letter addressed to me dated December 14, 2019, from Michael Jacobs and Ruby Jacobs, that letter was turned over by the *Journal* to its legal counsel, and I was not involved in preparing counsel's response.
>
> 7. Preparing for and attending a deposition in this matter would require me to incur time and expense that would not aid the resolution of this matter, and would take away from my responsibilities as Publisher.

*Id.* ¶¶ 3-7.

During discovery, in response to an interrogatory asking Plaintiffs to describe Lang's specific actions, or failures to act, which they allege create liability under any cause of action, each Plaintiff stated:

> William P. Lang: Lang is the Journal publisher and responsible for all his employee's actions. Lang is responsible for the setting of the policies and procedures at the Journal and hiring the opposing counsel. Lang's response to the Plaintiffs' Demand letter.

Doc. 153-3 at 3.

Likewise, at his deposition, Plaintiff Michael Jacobs explained why he had named Lang as a defendant:

> Q. So you have some other defendants named --
>
> A. Um-hum.
>
> Q. -- and I'd like to ask you about them. You've listed William Lang. Why -- what is your -- what are your claims against him?
>
> A. Buck stops here.
>
> Q. What do you mean by that?

> A. He's the boss. He owns the paper. It's family owned. Buck stops there.
>
> Q. All right. You're referring to the fact that he's identified on the masthead as the publisher of the newspaper, correct?
>
> A. Not just there, but in other documents I've seen.
>
> Q. Do you have any information that he was involved in the specific editing or review or publication or anything to do with this article?
>
> A. I only know what a publisher's job is, and if it's a family-owned business, a publisher generally is more inclined to get involved in some of the day-to-day stuff or week-to-week stuff, and he is the response -- he is really the responsible party because it's his publication.
>
> Q. I think I asked you earlier if you had worked for the Journal, and you said you had not. Do you have any personal information as to generally how involved Mr. Lang is in the reporting, editing or publication of individual articles?
>
> A. I don't know what Mr. Lang does.
>
> Q. And I'm going to ask you this again, and I just want your answer as to this article. Do you have any personal information regarding Mr. Lang's involvement in this particular article?
>
> A. Only based on the way a newspaper is run. That's all I have.

Doc. 135-4 at 2-3.

Defendants argue that because Lang has no personal knowledge of factual matters relevant to this case, the Court should issue a protective order from the notice of deposition under the "apex doctrine." Doc. 135 at 7. In the alternative, Defendants request a protective order against the requests for document production and an order clarifying that Lang will not be a Rule 30(b)(6) deponent.

## DISCUSSION

A.  <u>Apex doctrine</u>

The "apex doctrine" provides protection from depositions on the part of high-level executives and government officials. *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, 329 F.R.D. 694, 696–97 (D.N.M. 2019). Without using the phrase "apex doctrine," the

Tenth Circuit has affirmed a district court's protective order precluding the deposition of the chairman of the board of directors of a corporation. *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482-84 (10th Cir. 1995). Citing Federal Rule of Civil Procedure 26(c) and applying an abuse of discretion standard, the court considered several different factors. *Id.* at 483. First, the Tenth Circuit agreed that the notice of deposition violated procedural rules by being untimely and requiring the deponent to appear outside the appropriate geographical area. *Id.* Second, the court noted that the chairman submitted an affidavit "in which he testified that he lacked personal knowledge of [the plaintiff] and was unaware of her age, her performance ranking, any work evaluations that she might have received, or that she even worked for IBM." *Id.* The plaintiff argued that the "deposition was critical for her case because [the chairman] had allegedly authored an IBM policy designed to discriminate against older employees." *Id.* The Tenth Circuit found that argument unavailing because the plaintiff had not brought a disparate impact claim in her complaint, and the plaintiff "made no attempt to demonstrate that the information she seeks to obtain from [the chairman] could not be gathered from other IBM personnel, for whom a deposition might have been less burdensome." *Id.* Notably, the plaintiffs' supervisors were available for depositions and more likely to have responsive information. *Id.* Third, the court noted that the chairman averred "the deposition would have imposed 'severe hardship' because he was required to attend previously scheduled meetings with IBM senior management in New York" on the requested date. *Id.*

      The courts which have analyzed the "apex doctrine" by that name have said it is founded on Federal Rule of Procedure 26 which provides, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that

9

is more convenient, less burdensome, or less expensive . . . or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C); *see* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."); *see Tierra Blanca*, 329 F.R.D. at 697. Other applications of the doctrine involve a robust test, under which:

> the Court may protect a high level corporate executive from the burdens of a deposition when any of the following circumstances exist: (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company. The party seeking to depose an executive bears an initial burden of making some showing that the executive has "unique personal knowledge" of some relevant issues. Upon such a showing, the burden shifts to the executive to demonstrate by evidence that he in fact has no unique personal knowledge or that there exists one of the other three circumstances under which requiring him to sit for a deposition is inappropriate.

*Id.* at 697-98 (alterations omitted). At its core, however, this Court agrees that the apex doctrine is really just an application of Rule 26(b)(2)(C).

As Plaintiffs argue, Defendants do not make a very particularized showing of burden under this rule. The party seeking the protective order has the burden to show good cause for a protective order. "'To establish "good cause" for a protective order under Federal Rule of Civil Procedure 26[(b)(2)(c)], the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981) (quoting *In re Halkin*, 598 F.2d 176, 193 (1979)) (alterations omitted). Paragraph 7 of Lang's declaration does not meet this standard. Lang avers, in conclusory fashion, that "Preparing for and attending a deposition in this matter would require me to incur time and expense that would not aid the resolution of this matter, and would take away from my responsibilities as Publisher." Doc. 135-2 ¶ 7. But this applies to every employee who sits for a

deposition during a workday. In contrast, the chairperson in *Thomas* made a unique showing of hardship related to deposition at issue.

On the other hand, Lang does make a more robust showing that he lacks personal knowledge of many of the topics Plaintiffs wish to depose him on. He avers that he has personal knowledge of only one event related to the underlying facts of this matter: receiving a letter addressed to him dated December 14, 2019, from Michael Jacobs and Ruby Jacobs, and turning over that letter to legal counsel. Indeed, Plaintiffs admit "they believe that Defendant Lang was not present at their home or in the newsroom when the reporter and photographer returned to the Journal following the interview with Melissa Carroll. Nor did he provide any authority over the publication of the Jacobs Article and Cannes photograph on either December 15 or 16, 2024." Doc. 145 at 12.

However, Plaintiffs contend that Lang may have personal knowledge of the decision to attach a copyright notice in the Journal article and the decision to leave the Cannes photograph on the Journal's website after Plaintiffs' notice asserting copyright in the photo. They further assert he may have personal knowledge of income sources, contracts, and policies in place during the relevant time period. At a minimum, the Court agrees that Lang's response (if any) to the December 14, 2019 letter is a subject on which he has personal knowledge.

Therefore, the Court denies Defendants' motion to preclude Plaintiff from taking Lang's deposition. Nonetheless, Lang has presented evidence that to the extent he has relevant personal knowledge, that knowledge is minimal. In addition, as the Court sets forth below more fully, the majority of what Plaintiffs intend to question Lang about is de facto Rule 30(b)(6) testimony and Lang is not a Rule 30(b)(6) witness. As a result, the Court will limit Lang's deposition to two hours.

B.     Rule 30(b)(6)

Plaintiffs' stated reasons for seeking Lang's testimony indicate that they intend to treat him as a Rule 30(b)(6) witness. Plaintiffs cannot evade the requirements of Rule 30(b)(6) by naming a specific witness to provide discovery of corporate knowledge. Therefore, the Court grants Defendants' alternative request for relief, ordering: (1) Lang is relieved from the duces tecum portion of his subpoena; and (2) as a non-Rule 30(b)(6) witness, Lang has no Rule 30(b)(6) burden to prepare for his deposition and his testimony will not be binding on Journal Publishing Company in the manner of a Rule 30(b)(6) deposition.

Under Rule 30(b)(6), "a party may name as the deponent a . . . corporation . . . and must describe with reasonable particularity the matters for examination. . . . The persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). But it is the corporation who selects the deponent; a plaintiff does not get to choose the corporation's representative. *Id.* ("The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify."); *Tavasci v. Cambron*, No. 16cv461, 2017 WL 3173011, at *29 (D.N.M. May 31, 2017) (the plaintiff "cannot serve a rule 30(b)(6) deposition notice on Bravo—an individual, and she cannot instruct The Geo Group to name Bravo as its rule 30(b)(6) representative" (citation omitted)).

Plaintiffs are aware they did not notice a Rule 30(b)(6) deposition; indeed, they state they did not intend to do so. Doc. 145 at 17-18. Having made that decision, however, Plaintiffs cannot now end-run Rule 30(b)(6)'s provisions and get the Rule 30(b)(6)-type of information they seek from the witness of their choosing rather than the Rule 30(b)(6) witness Defendants would have named had Plaintiffs formally sought Rule 30(b)(6) testimony. Plaintiffs acknowledge that in an individual deposition, as opposed to a Rule 30(b)(6) deposition, "the interrogating party is

12

limited to facts known to the witness." Doc. 145 at 17. However, most of the facts Plaintiffs identify are topics related to corporate and institutional knowledge. The tool the Federal Rules of Procedure designed to obtain such information is Rule 30(b)(6). *See* Fed. R. Civ. P. 30, 1970 amendment advisory committee notes. When a party subpoenas a non-designated witness to obtain corporate information, "a court's decision whether to issue a protective order may take account of the availability and use made of the procedures provided in this subdivision." *Id.* Here, the Court takes account of the fact that, rather than availing themselves of the tool designed to obtain the corporate information they seek, Plaintiffs issued a non-Rule 30(b)(6) subpoena to a witness with little personal knowledge related to the allegations in Plaintiffs' complaint.

That Plaintiffs primarily seek Rule 30(b)(6) information from Lang rather than information about Lang's personal knowledge is apparent from a review of various documents. The list of topics Plaintiffs attached to Lang's deposition notice, Plaintiffs' responses to Defendants' interrogatories, Plaintiff Michael Jacobs's deposition testimony, and Plaintiffs' response to the present motion all focus on corporate, institutional, or legal information they expect Lang to possess. *See* Plaintiffs' Response, Doc. 145 at 3-5 (discussing the history of the Journal ownership), 5-6 (discussing the institutional role of newspaper publishers generally), 6-7 (arguing Lang can be held vicariously liable for the claims in the complaint), 13-15 (contending Lang has legal responsibility for copyright compliance and overseeing employees), 15-16 (contending Lang has financial responsibility for the paper), 20-22 (contending Lang has knowledge of corporate policies and training).

Ultimately, based on both Rule 26(b)(2)(C)'s burden test and Rule 26(b)(1)'s proportionality requirement, the Court balances the minimal amount of personal knowledge Lang

is likely to have against the fact that Lang has not made a robust showing of burden. Therefore, the Court will permit the deposition but limit the duration to two hours. This limitation mitigates the concern that Plaintiffs are using a fact witness deposition to evade the requirements of Rule 30(b)(6). But it will allow Plaintiffs to explore whether Lang does have personal knowledge on some matters.

Further, the Court grants both of Defendants' requests to limit the deposition as follows.

1. <u>Lang is not a Rule 30(b)(6) witness.</u>

The Court grants Defendants' request to make clear that Lang does not testify in the capacity of a corporate representative. Plaintiffs did not notice a Rule 30(b)(6) deposition, and even if they had, Defendants would select the witness, not Plaintiffs. Therefore, the Court rules that Lang need not appear with the knowledge and ability to testify regarding the topics set forth in Schedule A to the deposition notice, nor otherwise prepare to testify about information known or reasonably available to the organization in the manner required of a Rule 30(b)(6) witness. Lang's testimony will not be binding on the corporation in the same manner as a Rule 30(b)(6) witness. And Rule 32(a)(3) will not govern the admission of his deposition at trial.[1]

2. <u>The Court quashes the document requests.</u>

Defendants also request that the Court quash the request for document production that accompanied the deposition notice. Doc. 135 at 13; Doc. 135-1 at 5. As Defendants point out, a subpoena duces tecum accompanying a deposition notice cannot be used to evade the requirements of Rule 34 governing requests for production of documents from a party opponent. For example, under the federal rules, a deposition notice can be served with 14 days' notice, Fed.

---

[1] Rule 32(a)(3) specifies that "An adverse party may use for any purpose the deposition of a" corporate representative designated under Rule 30(b)(6).

R. Civ. P. 32(a)(5)(A), but a party has 30 days to respond to a request for production, Fed. R. Civ. P. 34(b)(2)(A). Plaintiffs agree that Rule 34 governs this document production requestion. Doc. 145 at 18. Plaintiffs contend that they will "correct Schedule B of the Notice under Rule 30(b)(2) wherein it requires the notice to a party deponent may be accompanied by a request under Rule 34." *Id.* at 19.

It is, however, too late for Plaintiffs to serve Rule 34 requests for production. Discovery has closed, and the Court has denied two requests to extend the discovery end date. Doc. 132; Doc. 151. The Court found that Plaintiffs demonstrated good cause to extend discovery for the limited purpose of deposing Lang because "Plaintiffs first asked for this deposition in December 2023, and Defendants do not contest Plaintiffs' assertions that the parties were trying to work out the timing of the deposition and that Defendants did not object to the deposition until April 2024." Doc. 132 at 3. The Court denied the request to reopen discovery for other purposes, finding that "Plaintiffs do not provide good cause for a general extension of all discovery" because "Plaintiffs do not explain why they could not have diligently met the discovery deadline in the time permitted." Doc. 132 at 2. The time to request a document production from Lang was neither discussed nor extended. Plaintiffs' May 21, 2024 document production request is untimely because discovery closed on April 15, 2024.

Finally, turning again to the considerations of burden and proportionality, the Court finds that the document requests are burdensome on their face. They span a wide range of topics, many of which seem to be directed to the corporation, not an individual. The relevance of documents produced because they are in Lang's personal possession, custody, or control would therefore likely be limited in comparison to requests for production served on the corporation. Further, many of the requests are directed to individuals other than Lang.

15

For all of these reasons, the Court quashes Plaintiffs' document requests.

THEREFORE, IT IS ORDERED THAT

1. Defendant Journal Publishing Co. And William P. Lang's Motion For Protective Order Regarding Deposition Of William P. Lang And Objections To Notice Of Deposition (Doc. 135) is DENIED IN PART and GRANTED IN PART.

2. Plaintiffs may take one deposition of William Lang, limited to 2 hours, in his capacity as a fact witness. The parties shall work cooperatively to schedule this deposition within 30 days of the date of this Order.

3. William Lang shall not be required to provide testimony in a Rule 30(b)(6) capacity and his testimony will therefore not be binding on Journal Publishing Company in the manner of a Rule 30(b)(6) deposition.

4. Plaintiffs' request for production of documents directed to William Lang is QUASHED.

SO ORDERED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE