**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MICHAEL JACOBS and
RUBY HANDLER JACOBS,

Plaintiffs,

v. Case No. 1:21-cv-00690-MV-SCY

THE JOURNAL PUBLISHING COMPANY
d/b/a/ THE ALBUQUERQUE JOURNAL,
WILLIAM P. LANG, NICHOLE PEREZ,
JAMES THOMPSON, ELISE KAPLAN,
KAREN MOSES, and DOES 1 THROUGH 20,
INDIVIDUALLY OR JOINTLY AND SEVERALLY,

Defendants.

**ORDER OVERRULING PLAINTIFFS' OBJECTIONS AND ADOPTING PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment (Doc. 196) ("Defendants' Motion for Summary Judgment"), filed April 18, 2025, in which Defendants seek summary judgment on all of Plaintiffs' claims. Also before the Court are Plaintiffs': (1) Motion for Summary Judgment (Doc. 213) ("Plaintiffs' Motion for Summary Judgment"), filed June 24, 2025; (2) Amended Motion to Extend the Deadline by One Day to File Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment Due to Continued Medical Emergency and Opposing Counsel's Last Minute Denial of Plaintiffs' Page Count Request (Doc. 226) ("Motion to Extend"), filed August 6, 2025; and, (3) Motion for Leave to Amend Motion for Summary Judgment (Doc. 230) ("Motion to Amend"), filed August 20, 2025 (collectively, "Plaintiffs' Motions"). Plaintiffs are proceeding *pro se*. In her Proposed Findings and Recommended Disposition ("PFRD"), filed July 8, 2026, United States Magistrate Judge Kirtan Khalsa recommended that the Court grant in part and deny in part Defendants' Motion for

Summary Judgment, and deny Plaintiffs' Motions. Doc. 237. On September 15, 2026, Plaintiffs filed their Objections. Doc. 247. On October 13, 2026, Defendants filed their Response to Plaintiffs' Objections. Doc. 251. On October 14, 2026, Plaintiffs filed a Motion for Leave to File Surreply and attached their Surreply (which is in actuality a reply) as Exhibit 1.[1] Doc. 252. Plaintiffs' Objections are now before the Court.

The Court has considered Defendants' Motion for Summary Judgment, Plaintiffs' Motions, the Magistrate Judge's PFRD, Plaintiffs' Objections, Defendants' Response to those Objections, and Plaintiffs' Reply to Defendants' Response, in light of the legal standards described below and has conducted a de novo review. Based on the Court's review, the Court finds that Plaintiffs' Objections to the Magistrate Judge's PFRD are not well-taken and therefore adopts Judge Khalsa's recommendations, as set forth below.

## LEGAL STANDARD

District courts may refer dispositive motions to a magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). "Within 14 days after being served with a copy of the [magistrate judge's] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). When resolving objections to a magistrate judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further

[1] Although Rule 72(b) does not contemplate reply briefs, but instead provides only for objections and responses thereto, the Court grants Plaintiffs' motion for leave to file their reply, and considers it herein.

evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Further, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

When plaintiffs proceed *pro se*, the court generally construes their pleadings liberally, holding them to a less stringent standard than those a party represented by counsel files. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In so doing, the court makes allowance for *pro se* litigants' "failure to cite proper legal authority, [their] confusion of various legal theories, [their] poor syntax and sentence construction, or [their] unfamiliarity with pleading requirements." *Id.* The court will not, however, construct arguments or search the record for the *pro se* party. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Issues will be waived if the *pro se* party's briefing "consists of mere conclusory allegations with no citations to the record or any legal authority for support." *Id.*

## BACKGROUND

In December 2016, Plaintiffs Michael Jacobs and Ruby Handler Jacobs were each charged by indictment with nine federal white-collar crimes. Doc. 237 at 1. Defendant the *Albuquerque Journal* ("*Journal*") published an article about the charges. *Id.* Plaintiffs' claims in this case derive from the *Journal*'s publication of the article and accompanying photographs, including a

photograph of a framed, four-by-six-inch print of a photograph of Plaintiffs in Cannes, France ("Cannes photograph"), a photo of a whiteboard in Mr. Jacobs' office with writing on it, a photograph of Melissa Carroll, who resided at Plaintiffs' residence, holding a map, and a United States Marshal's badge and identification card issued to Ms. Handler Jacobs. *Id.* at 5.

On July 26, 2021, Plaintiffs filed suit against the *Journal*, *Journal* reporter Nicole Perez, *Journal* photographer James Thompson, *Journal* publisher William Lang, *Journal* Managing Editor Karen Moses, and *Journal* employee Elise Kaplan. Doc. 1. Plaintiffs filed a first amended complaint on August 16, 2022, which the Court struck on October 12, 2022, because it was filed without Defendants' consent or the Court's leave. Docs. 54, 63. Meanwhile, on August 24, 2022, Plaintiffs sought the Court's leave to file a proposed second amended complaint, Doc. 56; and, on June 28, 2023, the Court granted this request in part but ordered Plaintiffs to modify the proposed complaint to omit certain futile claims. Doc. 77. Plaintiffs thus filed their operative third amended complaint on July 29, 2023, again naming the *Journal*, Ms. Perez, Mr. Thompson, Mr. Lang, Ms. Moses, and Ms. Kaplan, and also adding *Journal* editor Kent Walz and *Journal* photographer Dean Hanson as Defendants (the "operative complaint"). Doc. 79.

In the operative complaint, Plaintiffs assert claims for direct and contributory copyright infringement under the Copyright Act and for providing or distributing false copyright management information ("CMI") under the Digital Millenium Copyright Act ("DMCA") (Counts 1-3).[2] (Doc. 79 at 35-37.) These claims arise out of the *Journal*'s publication of Mr. Thompson's

---

[2] The operative complaint refers to "Plaintiffs" in Counts 1 through 3. Doc. 79 at 35-37. However, elsewhere, Plaintiffs acknowledge that Ms. Handler Jacobs does not own the copyright in the Cannes photograph, Doc. 104 at 5, and only a copyright owner may bring the Copyright Act claims asserted in Counts 1 and 2. 17 U.S.C. §§ 501(b), 504. Further, although any person injured by a violation of the DMCA may bring a claim under that Act, 17 U.S.C. § 1203, the operative complaint includes no factual allegations tending to show that any alleged violation of the DMCA injured Ms. Handler Jacobs. Rather, Plaintiffs allege only that Defendants' knowing distribution of false CMI obscured Mr. Jacobs' authorship and copyright ownership. Doc. 79 at ¶¶ 84-85, 95-97. Accordingly, Judge Khalsa recommends that this Court grant Defendants summary judgment on any claims Ms. Handler Jacobs asserts in Counts 1 through 3. Doc. 237 at 11 n.15. The Court agrees and adopts that recommendation.

photograph of the Cannes photograph and the manner in which the published photograph was credited. (*Id.*) Plaintiffs assert these claims against the *Journal*, Mr. Thompson, Mr. Lang, Mr. Walz, Ms. Moses, and Mr. Hanson. (*Id.*)

In addition, Plaintiffs assert six tort claims under New Mexico law (Counts 4-9). *Id.* at 37-44. In Counts 4 and 7, Plaintiffs assert claims of trespass and intrusion upon seclusion against Ms. Perez and Mr. Thompson based on these Defendants' entry into Plaintiffs' house. *Id.* at 37-38, 40-41. In Counts 5 and 6, Plaintiffs assert claims of trespass to chattel against the *Journal*, Ms. Perez, Mr. Thompson, Mr. Lang, Mr. Walz, and Ms. Moses, and claims of conversion against these Defendants and Mr. Hanson, based on Ms. Perez's and Mr. Thompson's alleged removal of the Cannes photograph and USMS badge from Plaintiffs' house. *Id.* at 38-40. Finally, in Counts 8 and 9, Plaintiffs assert claims of public disclosure of private facts and intentional infliction of emotional distress against all Defendants based on the *Journal*'s publication of Ms. Perez's article and Mr. Thompson's photographs. *Id.* at 41-44.

Both sides filed motions seeking summary judgment on all claims, Docs. 196, 213, and Judge Khalsa addressed those motions in her PFRD, in addition to addressing Plaintiffs' Motion to Extend, Doc. 226, in which Plaintiffs seek an extension of time to reply in support of their original summary judgment motion, and their Motion to Amend, in which they seek leave to file a proposed revised summary judgment motion. Doc. 230. Plaintiffs have filed Objections to the PFRD's recommendations that this Court deny in significant part Defendants' Motion for Summary Judgment and deny in their entirety Plaintiff's Motions. Plaintiffs' Objections are now before this Court.

## DISCUSSION

### I. Defendants' Motion for Summary Judgment

#### A. Plaintiffs' Claims Against Mr. Lang, Mr. Walz, Ms. Moses, Mr. Hanson, and Mr. Kaplan

In her PFRD, Judge Khalsa found that, with the exception of two sets of claims, Plaintiffs' evidence is plainly insufficient to establish that Mr. Lang, Mr. Walz, Ms. Moses, Mr. Hanson, or Ms. Kaplan could be personally liable for Plaintiffs' claims. Doc. 237 at 14. Specifically, she explained that the evidence on which Plaintiffs rely is inadequate to allow a reasonable fact finder to conclude that Mr. Lang, Mr. Walz, Ms. Moses, Mr. Hanson, or Ms. Kaplan knew that they were committing an unlawful or tortious act or intended to do so and, as such, it cannot support any claims that require proof of such knowledge or intent. *Id.* She further found that because Plaintiffs' claims for contributory copyright infringement (Count 2), DMCA violations (Count 3), trespass to chattel (Count 5), and intentional infliction of emotional distress (Count 9) all include such an element, Plaintiffs have failed to present sufficient evidence to survive summary judgment on any of these claims against these five Defendants. *Id.* at 14-15. Judge Khalsa also found that the evidence on which Plaintiffs rely fails to show that any of these Defendants ever entered Plaintiffs' house or took any items from it, which eliminates any possibility that these Defendants could be held liable for trespass (Count 4), conversion (Count 6), or intrusion upon seclusion (Count 7). *Id.*

As to Plaintiffs' claims for direct copyright infringement (Count 1) and public disclosure of private facts (Count 8), Judge Khalsa found that evidence in the record indicating that, in December 2016, Mr. Lang was the *Journal*'s publisher and Mr. Walz made the decision to publish Ms. Perez's article and Mr. Thompson's photographs could support the inference that Mr. Lang and Mr. Walz were personally involved in the alleged direct infringement of Mr. Jacobs' copyright in the Cannes photograph and the alleged public disclosure of private facts about Plaintiffs. *Id.* at

15. However, she found insufficient evidence to allow a reasonable factfinder to conclude that Ms. Moses, Mr. Hanson, or Ms. Kaplan either published or made the decision to publish the article and photographs, which eliminates any possibility that these Defendants could be liable for direct copyright infringement or public disclosure of private facts. *Id.* For these reasons, Judge Khalsa recommended that this Court grant summary judgment in Defendants' favor on all of Plaintiffs' claims against Ms. Moses, Mr. Hanson, and Ms. Kaplan, and on Plaintiffs' claims in Counts 2 through 7 and Count 9 against Mr. Lang and Mr. Walz.

Plaintiffs makes the following objections, none of which is availing. First, as to Mr. Lang, Plaintiffs' arguments appear to relate to how Mr. Lang handled a "demand" letter sent by Plaintiffs some years after the publication of the article and the Cannes Photograph. Doc. 247 at 32, 100. Those actions, however, are irrelevant to whether Mr. Lang had the requisite intent at the time of the alleged copyright violations or events underlying the tort claims. Plaintiffs fail to rebut the finding that Mr. Lang was not present at their home, arguing instead that Mr. Lang is jointly and severally liable for the alleged torts of *Journal* employees, or liable under theories of agency and "corporate officer personal participation doctrines." *Id.* at 141, 157. Plaintiffs, however, offer no legal or factual basis for such a finding, and the Court has found none.

Next, as to Mr. Walz, Plaintiffs equally fail to offer facts showing that Mr. Walz was at their home, or that he had any involvement with the photograph underlying the copyright claims. They also argue the same corporate officer theory of liability as they do with regard to Mr. Lang, *id.*; it is equally baseless here.

Further, as to Ms. Moses (now Ms. Oltmans), Plaintiffs mention that she received the post-publication demand letter and note that she would usually attend daily meetings at the *Journal*. *Id.* at 86, 88-90. Plaintiffs, however, offer no evidence as to whether Ms. Oltmans attended the

particular meeting during which publication of the article and photographs at issue here was discussed, or any other evidence to demonstrate that Judge Khalsa erred in recommending summary judgment in Ms. Oltmans' favor.

Moreover, as to Mr. Hanson, Plaintiffs offer no evidence to rebut the finding that Mr. Hanson was not present at Plaintiffs' home, and indeed mention him only in passing, focusing on his title of "assistant photo editor," in the context of a discussion of the *Journal*'s alleged corporate hierarchy. *Id.* at 116. Plaintiffs, however, offer no evidence sufficient to demonstrate that Judge Khalsa erred in recommending summary judgment in Mr. Hanson's favor.

Finally, as to Ms. Kaplan, Plaintiffs offer no evidence to rebut her lack of intent or presence at Plaintiffs' home. Instead, Plaintiffs argue a "direct collaborative reporting loop" and a "tightly knit reporting cycle," *id.* at 144-46, neither of which demonstrates any error on Judge Khalsa's part in recommending summary judgment in Ms. Kaplan's favor.

B. Mr. Jacobs' Copyright Act and DMCA Claims (Counts 1-3)

Mr. Jacobs alleges that Defendants directly infringed on his copyright in the Cannes photograph by photographing and publishing a copy of that photograph without his permission (Count 1), that Defendants contributed to nonparties' infringement of his copyright (Count 2), and that Defendants knowingly and intentionally provided and distributed false CMI about the Cannes photograph in violation of the DMCA (Count 3). Doc. 237 at 16. In their Motion, Defendants presented four reasons why the Court should grant summary judgment in their favor on Counts 1 through 3. First, Defendants asserted that they are entitled to summary judgment on Count 1 because their use of the Cannes photograph constitutes "fair use." *Id.* Second, Defendants asserted that they are entitled to summary judgment on Count 2 because Plaintiffs can present no evidence of another's direct, domestic infringement or that Defendants contributed to such an infringement.

*Id.* Third, Defendants argued that they are entitled to summary judgment on Count 3 because there is no evidence that Defendants distributed false CMI knowingly and intentionally. *Id.* Finally, Defendants argued that they are entitled to summary judgment on all of the claims in Counts 1 through 3 because Mr. Jacobs cannot establish actual damages. *Id.* Judge Khalsa recommended that this Court: deny summary judgment on Mr. Jacobs' direct copyright infringement claims based on fair use (Count 1); deny summary judgment on Mr. Jacobs' contributory infringement claim against the *Journal* to the extent that it is based on alleged direct infringement by the Zuma website but grant summary judgment on their contributory infringement claims against the *Journal* based on the other identified nonparty websites (Count 2); grant summary judgment on the DMCA claims (Count 3); grant summary judgment on Mr. Jacobs' infringement claims for actual damages; grant summary judgment on Mr. Jacobs' infringement claims for a disgorgement of profits; and deny summary judgment on Mr. Jacobs' direct infringement claims for injunctive relief against the *Journal*, Mr. Thompson, Mr. Lang, and Mr. Walz, and his contributory infringement claim for injunctive relief against the *Journal* based on nonparty Zuma's alleged direct infringement. *Id.* at 16-35.

First, Plaintiffs object to Judge Khalsa's recommendation that this Court grant summary judgment on Mr. Jacobs' contributory infringement claim against the *Journal* to the extent that it is based on the alleged direct infringement by nonparty websites other than Zuma. In support of that recommendation, Judge Khalsa found that while Mr. Jacobs presented evidence that the Cannes photograph appeared on nonparty websites without his permission, with the exception of the Zuma website, he pointed to no evidence tending to show that any Defendant knew of and caused or materially contributed to the infringement or acted in concert with any of the websites. *Id.* at 24. Judge Khalsa found that Mr. Jacobs' lack of knowledge about how those other websites

obtained the Cannes photograph – and his belief that his niece gave the photograph to one of them – further undermined his contributory infringement claims. *Id.*

Plaintiffs provide no contrary evidence in support of their Objection. Indeed, Mr. Jacobs concedes that he "lacks direct knowledge" of how the other websites obtained the Cannes photograph. Doc. 247 at 96. Plaintiffs nonetheless argue that with the "automated, systemic mechanics of modern internet syndication and web scraping, it is a mathematical certainty that search engines, RSS aggregators, scraping bots, and syndication networks (such as Zuma Press and Imago Images) will scrape and propagate that file globally." *Id.* at 97. According to Mr. Jacobs, the issue rests on whether "the primary Defendant launched the master infringing asset into a commercial ecosystem with reason to know it would be duplicated and displayed." *Id.* at 99. At essence, Mr. Jacobs makes the strict liability argument that when a copyrighted photograph is first published by one entity and subsequently by others, the first entity necessarily must have had knowledge of, and thus materially contributed to, the subsequent infringement. Plaintiffs, however, offer no legal authority for this assertion. This is unsurprising, as their assertion runs counter to legal precedent, which requires the elements of both knowledge and causation/material contribution to prove copyright infringement. The Court cannot adopt a legal theory that would obviate the legal requirements of Plaintiffs' claim. Plaintiffs thus have not demonstrated any error in Judge Khalsa's recommendation that the Court grant summary judgment on Mr. Jacobs' contributory infringement claim against the *Journal* to the extent that it is based on the alleged direct infringement by nonparty websites other than Zuma.

Next, Plaintiffs object to Judge Khalsa's recommendation that this Court grant summary judgment on Mr. Jacobs' DMCA claim. In support of that recommendation, Judge Khalsa found that the *Journal* published Mr. Thompson's photograph of the Cannes photograph above a caption

that stated, "[t]his photo of [Plaintiffs] was found at their [Northeast] Albuquerque home Thursday." Doc. 237 at 25. Read in conjunction with this caption, she explained, the credits and metadata on which Mr. Jacobs relies to support his DMCA claims accurately communicate that the published copy of the Cannes photograph is Mr. Thompson's photograph of a photograph found in Plaintiffs' home. *Id.* In these circumstances, Judge Khalsa concluded, even assuming that Defendants provided or distributed false CMI about the Cannes photograph, a reasonable factfinder could not conclude that they did so knowingly and with the intent to induce, enable, facilitate, or conceal copyright infringement. *Id.*

In objecting, Plaintiffs argue that Judge Khalsa "confus[ed] a visible print caption with hidden digital metadata" and that "the coded digital file (230-6, Exh. 10) was then pushed downstream to international networks." Doc. 247 at 18. This Court does not agree that Judge Khalsa "confused" the issues. Rather, she disagreed with, and thus rejected, the argument that Plaintiffs continue to make here, namely that *only* the metadata embedded in the version of the photograph published in the *Journal* is relevant to the Court's determination, and that such metadata is sufficient to establish a DCMA violation. Indeed, Plaintiffs continue to press this point in their Reply, arguing that Judge Khalsa's recommendation is wrong because Mr. Thomson "explicitly admitted under oath that he used Adobe Photoshop to input his own name into the 'Creator/Author' electronic metadata field and 'The Albuquerque Journal' into the 'Copyright Notice' field before uploading the digital asset onto the newsroom's public servers." Doc. 252-1 at 2. Mr. Thompson's admissions, however, are insufficient as a matter of law to establish that Defendants acted knowingly and with the intent to induce, enable, facilitate, or conceal copyright infringement. The Court thus cannot agree with Plaintiffs that Mr. Thompson's admission "satisfies the 'double scienter' requirement of 17 U.S.C. § 1202(a)." *Id.* To the contrary, neither

this evidence, nor any other evidence presented by Plaintiffs, establishes that at the time the *Journal* published the Cannes photograph, Defendants had any knowledge that Mr. Jacobs (or any other person) had any copyright to the photograph, and knowingly falsified such copyright information with the intent to induce, enable, facilitate, or conceal infringement. Accordingly, Plaintiffs have not demonstrated any error in Judge Khalsa's recommendation that the Court grant summary judgment on Mr. Jacobs' DCMA claim.

Plaintiffs also object to Judge Khalsa's recommendation that the Court grant summary judgment on Mr. Jacobs' infringement claims both for actual damages and for a disgorgement of profits. In support of her recommendation regarding actual damages, Judge Khalsa found that Mr. Jacobs' proferred economic damages are too speculative to be actionable. Doc. 237 at 29. In making this finding, Judge Khalsa engaged in a detailed and well-reasoned analysis of each argument presented by Plaintiffs. *See id.* at 29-32.

In objecting, Plaintiffs simply repeat their earlier arguments. They insist that Judge Khalsa's recommendation was based on a misapplication of the law, as "Mr. Jacobs' extensive, 57-year history of commercial contracts with premier domestic and international publications and networks provides the precise objective benchmark required to establish a robust market value" for purposes of determining actual damages. Doc. 252-1 at 3. The Court cannot agree that Judge Khalsa's recommendation rested on any error in understanding the facts, interpreting the law, or applying the law to the facts. Rather, the Court finds that Judge Khalsa accurately applied the relevant law to the facts viewed in the light most favorable to Plaintiffs, and properly determined that, as a matter of law, Mr. Jacobs' proferred economic damages are too speculative to be actionable.

In support of her recommendation regarding disgorgement of profits, Judge Khalsa found that Mr. Jacobs failed to demonstrate a genuine issue of material fact regarding an essential element of his profits claims, *i.e.*, the fact and amount of any Defendant's gross revenue that is reasonably related to the alleged infringement of his copyright in the Cannes photograph. Doc. 237 at 34. In objecting, Plaintiffs do not present any evidence that either the *Journal* or any individual Defendant earned a profit from the publication of the Cannes photograph. Instead, they reiterate their earlier point that the *Journal* placed the photograph "above the fold," and thus must have profited from the alleged infringement. Doc. 247 at 122. As Judge Khalsa found, this argument lacks adequate evidentiary support. Plaintiffs also argue that it is unfair to "shift[] the statutory burden onto the *pro se* Plaintiffs to calculate precise line-item profits." *Id.* Plaintiffs thus take issue with the legal standard, rather than with the accuracy of Judge Khalsa's application of that standard to the facts.

As Judge Khalsa stated, Plaintiffs bear the burden of showing a nexus between the use of the Cannes photograph and the making of a profit. Doc. 237 at 33. Plaintiffs have failed to meet this burden. It is insufficient to point to the placement of the photograph "above the fold" and leave it for the jury to connect the theoretical dots that this placement generated revenue for the newspaper and/or its employees. Accordingly, the Court agrees with Judge Khalsa that Plaintiffs fail to demonstrate a genuine issue of material fact regarding an essential element of Mr. Jacobs' profits claims.

C. Plaintiffs' Tort Claims (Counts 4-9)

Judge Khalsa recommended that the Court grant summary judgment on Plaintiffs' claims of trespass (Count 4), trespass to chattel (Count 5), conversion (Count 6), intrusion on seclusion (Count 7), public disclosure of private facts (Count 8), and intentional infliction of emotional

distress (Count 9). First, Judge Khalsa recommended summary judgment on Plaintiffs' trespass claim because it is undisputed that, at the relevant time, Ms. Carroll, who was a known occupant of Plaintiffs' property with the ability to permit others to enter onto the property, gave Ms. Perez and Mr. Thompson consent to enter. Doc. 237 at 34. In objecting, Plaintiffs rehash their earlier arguments that there was a "no trespassing" sign in front of the house, that there was a written agreement limiting access to the house, and that Ms. Carroll had been instructed not to permit visitors. Judge Khalsa, however, thoroughly considered and properly rejected these arguments, based on an accurate analysis of controlling law. *See id.* at 36-38. Plaintiffs have provided no new evidence or contrary authority to call into question Judge Khalsa's recommendation on Plaintiffs' trespass claim.

Next, Judge Khalsa recommended summary judgment on Plaintiffs' trespass to chattel and conversion claims, because those claims rely on the removal of the Cannes photograph and the USMS badge from Plaintiffs' house by Ms. Perez and/or Mr. Thompson, and it is undisputed that neither Ms. Perez nor Mr. Thompson removed any personal property from the house. *Id.* at 38-42. In their Objections, Plaintiffs argue, for the first time, that the tort of conversion does not require evidence that any Defendant removed the Cannes photograph from their house, but rather can be established by Mr. Thompson having taken a photograph of it. Doc. 247 at 112, 119-20. This new theory, however, must be deemed waived, as it was "raised for the first time in objections to the magistrate judge's recommendation." *Marshall*, 75 F.3d at 1426. Indeed, even if properly before the Court, this new argument would not win the day, as it runs counter to the legal definition of conversion as "the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and

injurious use of another's property, or a wrongful detention after demand has been made." Doc. 237 at 38-39 (quoting *Nosker v. Trinity Land Co.*, 757 P.2d 803, 807–08 (N.M. Ct. App. 1988)).

Judge Khalsa similarly recommended summary judgment on Plaintiffs' intrusion on seclusion claim because it is undisputed that, rather than having gained access to Plaintiffs' house and its contents in a highly offensive way, as required to establish an intrusion on seclusion, Ms. Perez simply contacted Ms. Carroll and asked her for an interview, which she granted. Doc. 237 at 42-44. In their Objections, Plaintiffs do not specifically identify any error by Judge Khalsa on this count, but instead discuss "the mechanical reality of the photo layout and the professional photojournalism metrics established by Plaintiff Michael Jacobs' 57-year international career." Doc. 247 at 52. The Court is unconvinced that this discussion has any relevance here; it certainly does not establish any error on Judge Khalsa's part.

Further, in recommending summary judgment on Plaintiffs' public disclosure of private facts claim, Judge Khalsa found that Plaintiffs failed to establish the requisite element of a lack of legitimate public interest in the information allegedly disclosed, namely, photographs of the Cannes photograph, the USMS badge, the whiteboard with writing on it, and Ms. Carroll holding a map. Doc. 237 at 44-46. In their Objections, Plaintiffs vaguely argue that the contents of the photographs were "private residential communications" and "private office whiteboard notes," but do not rebut Judge Khalsa's findings that the information in the photographs was of public interest. In the absence of any indication of how Judge Khalsa erred in applying controlling law to the undisputed facts, the Court can find no error in Judge Khalsa's recommendation.

Finally, in recommending summary judgment on Plaintiffs' intentional infliction of emotional distress ("IIED") claim, Judge Khalsa found that, as a matter of law, Defendants' article and caption about the Cannes photograph were accurate and thus could not support Plaintiffs' IIED

claim, and that the other acts on which Plaintiffs based their IIED claim were not sufficiently extreme or outrageous to sustain the claims. *Id.* at 46-49. In their Objections, Plaintiffs mention their IIED claims only in passing, and do not directly address Judge Khalsa's findings or recommendation on this count. Accordingly, Plaintiffs have failed to demonstrate that Judge Khalsa erred in making her recommendation.

II. Plaintiffs' Motions

Plaintiffs filed three motions: their Motion for Summary Judgment in their favor on all of their claims, Doc. 213, their Motion to Extend their time to reply in support of their motion, Doc. 226, and their Motion to Amend, Doc. 230, in which they sought leave to file a revised summary judgment motion. Judge Khalsa recommended that this Court deny Plaintiffs' Motions. This Court finds no error in her recommendations.

First, with regard to their Motion for Summary Judgment, Judge Khalsa noted that, for the reasons set forth in earlier sections of her PFRD, Defendants have shown that they are entitled to summary judgment on all of Plaintiffs' claims except for Mr. Jacobs' (a) direct infringement claims for injunctive relief against the *Journal*, Mr. Thompson, Mr. Lang, and Mr. Walz, and (b) contributory infringement claim for injunctive relief against the *Journal* based on nonparty Zuma's alleged direct infringement. Doc. 237 at 55. As Judge Khalsa explained, Plaintiffs necessarily have failed to show that they are entitled to judgment as a matter of law on the claims on which Defendants have prevailed. *Id.* Further, Judge Khalsa found that Mr. Jacobs has failed to meet his burden to show that he is entitled to judgment as a matter of law on his surviving copyright claims. *Id.* Among other things, she noted that the record does not unequivocally show that Mr. Jacobs is the author of the Cannes photograph or the owner of its copyright, nor does it establish that Mr. Lang and Mr. Walz participated in the *Journal*'s alleged infringement of the copyright as a matter

of law. *Id.* As discussed earlier in her PFRD, she noted that there remain genuine issues of material fact regarding whether Defendants' use of the Cannes photograph was a fair use. *Id.* Accordingly, she recommended that Plaintiffs' Motion for Summary Judgment be denied. *Id.*

In their Objections, Plaintiffs do not argue to the contrary that they are entitled to summary judgment on Mr. Jacobs' surviving copyright claims. Because Plaintiffs have failed to show the absence of genuine issues of material fact on the surviving copyright claims, the Court can find no error in Judge Khalsa's recommendation that this Court deny summary judgment to Plaintiffs on those claims.

Next, with regard to Plaintiffs' Motion to Extend, Judge Khalsa explained that, while Plaintiffs originally sought to extend their deadline to reply in support of their Motion for Summary Judgment to August 15, 2025, on August 20, 2025, Plaintiffs "chang[ed] tack" and, in lieu of filing a summary judgment reply, filed their Motion to Amend, to which they attached a proposed revised summary judgment motion. Doc. 237 at 50. Given Plaintiffs' decision to file the Motion to Amend in lieu of filing a late reply, Judge Khalsa found that their Motion to Amend superseded their Motion to Extend, and accordingly, rendered moot the Motion to Extend. *Id.* at 51 n.33.

In their Objections, Plaintiffs do not address this finding, other than to argue that the entire PFRD was "premature" and that all briefing should continue, and to assert that the finding was a "manufactured procedural penalty." Doc. 247 at 59, 71. The Court agrees with Judge Khalsa that the record demonstrates that Plaintiffs abandoned their plan to file a reply. Accordingly, Judge Khalsa correctly recommended that Plaintiffs' Motion to Extend be found as moot.

Finally, with regard to Plaintiffs' Motion to Amend, Judge Khalsa noted that their proposed revised summary judgment motion was 47 pages longer than their original Motion and attached 126 pages of exhibits, despite having attached no exhibits to their original motion. Doc.

237 at 50. Judge Khalsa concluded that, because Plaintiffs' proposed revised summary judgment motion differed so comprehensively from their original motion, and because Plaintiffs did not file their Motion to Amend until August 20, 2025, the Court would have to reopen Plaintiffs' dispositive motions deadline to allow them to file it, which, in turn, would require a showing of good cause and excusable neglect. *Id.* at 51. After conducting a thorough analysis, which with this Court agrees, Judge Khalsa found that Plaintiffs have failed to demonstrate good cause and excusable neglect. *Id.* at 51-55.

In their Objections, Plaintiffs rehash their prior arguments as to good cause and excusable neglect. Those arguments remain unavailing and fail to show any error on Judge Khalsa's behalf. Plaintiffs also contend that the PFRD committed a "manifest error of law" by "explicitly cit[ing], analyz[ing], and rel[yng] upon" Plaintiffs' proposed amended motion "over fifty (50) separate times," while at the same time issuing a "final, binding denial of that exact same motion in its conclusion." Doc. 252-1 at 5. This argument, however, misunderstands the PFRD. Judge Khalsa did not rely on Plaintiffs' proposed amended motion, but rather, out of an abundance of caution and in recognition of Plaintiffs' *pro se* status, wrote additionally to explain why, even if the proposed amended motion were considered, it would provide no basis for her to reach a contrary result. *See, e.g.*, Doc. 237 at 31 ("[E]ven if the Court were to grant the Motion to Amend and entertain the proposed revised motion, Mr. Jacobs' actual damages would be too speculative to survive summary judgment."). In short, Judge Khalsa went to great pains to consider whether the proposed motion would entitle Plaintiffs to summary judgment or assist Plaintiffs in overcoming Defendants' Motion for Summary Judgment; she determined that it would not. This extra analysis creates no "profound internal conflict," Doc. 252-1 at 5, and certainly does not reflect any error by Judge Khalsa.

## CONCLUSION

Following its *de novo* review, the Court agrees with the Magistrate Judge's recommendations. Accordingly, the Court **ADOPTS** the Magistrate Judge's PFRD (Doc. 237) and **OVERRULES** Plaintiff's Objections (Doc. 247).

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 196) is **GRANTED in part and DENIED in part**, as follows:

A. Defendants' Motion for Summary Judgment is **GRANTED** as to the following:

1. In Counts 1 and 2 of the operative complaint (Doc. 79):

a. All of Ms. Handler Jacobs' claims for direct and contributory copyright infringement;

b. All of Mr. Jacobs' direct and contributory copyright infringement claims for statutory damages, punitive damages, attorney's fees, actual damages, and profits;

c. Mr. Jacobs' direct copyright infringement claims for injunctive relief against Ms. Moses and Mr. Hanson; and

d. All of Mr. Jacobs' contributory copyright infringement claims for injunctive relief, with the sole exception of his contributory copyright infringement claim for injunctive relief against the *Journal* based on nonparty Zuma's alleged direct copyright infringement.

2. In Count 3 of the operative complaint, all of Plaintiffs' claims under 17 U.S.C. § 1202(a) of the DMCA.

3. In Counts 4 through 9 of the operative complaint, all of Plaintiffs' tort claims.

B. Defendants' Motion for Summary Judgment is **DENIED** as to the following:

1. In Count 1 of the operative complaint, Mr. Jacobs' direct copyright infringement claims for injunctive relief against the *Journal*, Mr. Thompson, Mr. Lang, and Mr. Walz; and

2. In Count 2 of the operative complaint, Mr. Jacobs' contributory copyright infringement claim for injunctive relief against the *Journal* based on nonparty Zuma's alleged direct copyright infringement.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 213) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion to Extend the Deadline by One Day to File Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment Due to Continued Medical Emergency and Opposing Counsel's Last Minute Denial of Plaintiffs' Page Count Request (Doc. 226) is **FOUND AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Amend Motion for Summary Judgment (Doc. 230) is **DENIED.**

MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE