**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**MICHAEL JACOBS and**
**RUBY HANDLER JACOBS,**

**Plaintiffs,**

**vs.**

**Case No. 1:21-cv-00690-MV-JMR**

**THE JOURNAL PUBLISHING COMPANY *d/b/a* THE ALBUQUERQUE JOURNAL; WILLIAM P. LANG; NICOLE PEREZ; JAMES THOMPSON; ELISE KAPLAN; KAREN MOSES; and DOES 1 THROUGH 20; INDIVIDUALLY OR JOINTLY and SEVERALLY,**

**Defendants.**

**PLAINTIFFS' MOTION FOR RECUSAL AND DISQUALIFICATION**
**OF MAGISTRATE JUDGE KIRTAN KHALSA**
**PURSUANT TO 28 U.S.C. §§ 144 AND 455**

COMES NOW, Plaintiffs Michael Jacobs and Ruby Handler Jacobs, appearing *pro se*[1], and respectfully move for the formal disqualification and recusal of Magistrate Judge Kirtan Khalsa from any further participation, administration, or referral tracking in this action pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455(a)-(b)(1). Plaintiffs further request that all prior recommendations adopted under this structural conflict be preserved as contested tracks for *de novo* appellate review.

As grounds for this Motion, Plaintiffs state as follows:

## I. THE MANDATORY STATUTORY FRAMEWORK FOR DISQUALIFICATION

[1] The Supreme Court found that pro se pleadings should be held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 520 (1971), *Puckett v. Cox*, 456 F. 2d 233 (1972) (6th Cir. USCA).

Under 28 U.S.C. § 455(a), any justice, judge, or magistrate judge of the United States shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned. Furthermore, § 455(b)(1) mandates recusal where a judge possesses a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts. The standard is strictly objective: whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. *United States v. One Parcel of Real Prop.,* 73 F.3d 1057 (10th Cir. 1996).

## II. DOCUMENTED PATTERN OF STRUCTURAL HOSTILITY AND EXTRAJUDICIAL BIAS IN PARALLEL LITIGATION (JACOBS V. BRANDON CLARK ET AL.)

A. The prior Magistrate Judge Kirtan Khalsa's impartiality is profoundly compromised due to a deep, documented pattern of structural hostility and adversarial overreach executed against these identical *pro se* Plaintiffs in their parallel house-sitter litigation: please take judicial notice of *Jacobs v. Brandon Clark, et al*, Case No. 1:23-cv-01060-MLG-JMR. A forensic audit of the Magistrate's Orders to Show Cause (Docs. 5, 7, and 31 in that action) reveals that the Magistrate systematically abandoned the doctrine of *pro se* solicitude to build defensive hurdles for the litigants, a bias so severe that District Judge James O. Browning was forced to step in via Memorandum Opinion (Doc. 40) to overrule the overreach.

B. The specific, uncontradicted prongs of extrajudicial bias carried from that case into this action include:

1. **Stripping Core Constitutional Protections:** Inside the Brandon Clark Order to Show Cause (Doc. 31, p. 4), the Magistrate Judge completely dismissed Plaintiffs' reliance on Article I, Section 8, Clause 8 of the United States Constitution (the Copyright Clause), ruling aggressively that "*the clause does not establish any rights for those creators*." To tell a 57-year

veteran photojournalist carrying a certified U.S. Copyright registration that the Constitution provides him zero individual rights against corporate or private conversion represents a flagrant attempt to strip a *pro se* litigant of his legal footing.

2. **Extrajudicial Interrogation and Disparagement of Law Enforcement Credentials**: Inside Docs. 5 (p. 3) and 7 (p. 1) of the Brandon Clark file, the Magistrate Judge launched an invasive, irrelevant background audit of Plaintiff Ruby Handler Jacobs' credentials as a "former U.S. Marshal Contracted Deputy," ordering her under threat of dismissal to file a notice detailing her specific service dates and federal districts. In a simple civil suit for breach of contract and theft against a house sitter, forcing a plaintiff to undergo a personal credibility interrogation serves zero legitimate legal purpose and establishes an immediate adversarial bias.

3. **Punitive Exposure of Sealed Privacy Documents:** Inside her Second Order to Show Cause (Doc. 7, pp. 1–2), the Magistrate Judge actively threatened to forcefully open Ruby Handler Jacobs' private filings to the general public, ruling that she "*did not identify a real and substantial interest in depriving the public of access*." The Magistrate was fully aware from the pleadings that the defendants were highly volatile individuals facing severe conversion and animal cruelty claims; threatening to strip a pro se woman of her protective privacy measures constitutes a total abandonment of the court's mandatory duty to protect vulnerable litigants.

4. **Categorical Minimization of Mass Theft and Tort Claims:** Inside Doc. 31 (pp. 11–13) of the Brandon Clark file, the Magistrate systematically characterized every single one of Plaintiffs' substantive tort claims—including Civil Theft, Conversion, Conspiracy, and Invasion of Privacy—as legally deficient or time-barred, hunting for technical, statutory loopholes to insulate the default-shrouded defendants from property devastation claims.

5. **The absolute proof of this structural hostility**: This is confirmed by District Judge Browning's March 28, 2025 Order (Doc. 40), which explicitly exposed the "timeline trap" used by the Magistrate Judge to dismiss Plaintiffs' case by forcing an amendment and then claiming the prior service was voided. Judge Browning ruled that the Magistrate's harsh, punitive approach "completely violates the special solicitude rules... and represents a clear abuse of discretion," stepping in to grant an equitable rescue.

6. **The same procedural ambush imported into this instant case:** Tragically, this exact same procedural ambush was imported whole-cloth into the active PFRD (Doc. 237) inside this case (1:21-cv-00690-MV-JMR) to insulate the *Albuquerque Journal* from liability. Operating under the identical echo chamber of bias, the Magistrate Judge resolved deep credibility and technical timeline conflicts in favor of the moving corporate Defendants. This bias culminated in a fatal, contradictory procedural mismatch: the Magistrate explicitly cited and depended upon Plaintiffs' amended summary judgment layout (Doc. 230) over fifty (50) separate times throughout the body text, but subsequently executed an unauthorized, binding denial of that exact same motion in the conclusion to prevent Plaintiffs' cured evidentiary record from being officially credited.

## III. THE REVERSIBLE MANIFESTATION OF BIAS INSIDE THE PFRD (DOC. 237)

A. **The prior Magistrate Judge's historical animus** directly infected her administration of the active summary judgment track in this case, resulting in a 57-page PFRD (Doc. 237) that reads as an adversarial defense brief rather than a neutral judicial evaluation. This structural bias is explicitly manifested through the following four rulings within the PFRD:

1. **The Procedural Mismatch of Document 230**: The absolute proof of this structural hostility is demonstrated by the fact that the Magistrate Judge explicitly cited, analyzed, and

depended upon Plaintiffs' amended summary judgment layout (Doc. 230) over fifty (50) separate times throughout the body of the PFRD text. Yet, in the conclusion, the Magistrate executed a binding, final denial of that exact same motion. The Magistrate utilized Plaintiffs' under-hours, bedside ICU emergency draft (Doc. 213) to recommend the total dismissal of the lawsuit, while simultaneously blocking the cured, fully developed evidentiary record from being officially recognized on the docket.

2. **Weaponizing Footnotes to Bury Substantive Procedural Tracks**: In an explicit attempt to minimize judicial review, the Magistrate Judge buried her concurrent proposed resolutions of three out of five pending substantive motions inside dismissive footnotes (see Doc. 237 at 51 fn.33). By dedicating an analytical omission to critical discovery failures, Plaintiffs' Motion to Strike, and Rule 37 sanction tracks, the Magistrate enacted a "procedural ambush" designed to insulate the corporate Defendants from direct tort hooks.

3. **Complete Suppression of Thompson's Transcribed Confession**: Inside the PFRD's Actual Damages and DMCA analysis, the Magistrate Judge completely suppressed the definitive discovery record to rule that Plaintiffs' metadata tracks were "speculative." The Magistrate flatly ignored Defendant Thompson's explicit deposition confession (Doc. 230-3 at 134) where he admitted under oath that he used Adobe Photoshop to manually hardcode his name into the "Creator" field and "Albuquerque Journal" into the "Copyright Notice" field of the internal IPTC digital file code. By confusing human-readable print captions with internal software code to declare that "no evidence of intent exists," the Magistrate engaged in an impermissible weighing of facts to shield the photographer from the double scienter standard of 17 U.S.C. § 1202(a).

4. **Artificial Insulation of the Newsroom Hierarchy**: The Magistrate Judge systematically decoupled the coordinated newsroom raid to grant blanket summary judgment to Editor Kent Walz, Managing Editor Karen Moses, and Photo Editor Dean Hanson. The Magistrate ruled that because these individual desk editors were not physically present past the residential "No Trespassing" signs, they carried zero liability. This finding completely misapplies Tenth Circuit secondary and vicarious liability frameworks, entirely ignoring that Photo Editor Hanson (Doc. 247 at 116) served as the direct operational node who received, opened, and altered the digital file paths to launch the infringed master file into global commercial syndication.

**IV. SPECIFIC GROUNDS FOR RECUSAL**

**GROUND ONE: Minimization and Dismissal of the Plaintiffs' Pleadings**

**5. Page 2, Paragraph 1:** The text refers to the plaintiffs' responses to the Undisputed Material Facts (UMFs) as **"semantic quibbles that do not amount to genuine, material disputes."**

   a. *Bias Indicator:* Characterizing a *pro se* litigant's formal civil response as "semantic quibbles" shows an extrajudicial lack of neutrality and personal disdain for the style of the plaintiffs' legal defense.

**6. Page 2, Footnote 3:** The judge highlights as an example of a "quibble" that Plaintiff Jacobs corrected the description of the "Cannes photograph" by stating that the vessels in the background **"are in fact 'yachts'"** rather than "boats" *(See* Doc. 79, fn 5).

   a. *Bias Indicator:* Using a precision-based correction from a professional photographer to mock the plaintiff in a published footnote demonstrates a patronizing attitude toward a *pro se* filer.

**GROUND TWO: Disregard of Documented Medical Emergencies**

7. **Page 1, Paragraph 2 & Page 2, Paragraph 1:** The judge copies Plaintiffs' caption detailing their **"Amended Motion to Extend the Deadline by One Day... Due to Continued Medical Emergency..."**. Immediately following this layout, the judge blanketly recommends **"that Plaintiffs' Motions are not well-taken and RECOMMEND that they be DENIED"**.

   a. *Bias Indicator:* The report completely brushes past a documented medical emergency involving a 100% disabled veteran and a spouse undergoing treatment for life-threatening leukemia without affording any judicial empathy or standard equitable extension flexibility.

**GROUND THREE: Evidentiary Double Standards (Wholesale Acceptance of Defense Affidavits)**

8. **Page 14, Paragraph 2:** The judge addresses Plaintiffs argument that the *Albuquerque Journal* employees submitted self-serving, identically worded statements to shield themselves from individual liability. The judge actively protects the defense team, stating, **"But parties' affidavits are virtually always self-serving... and courts may nevertheless rely on them..."**.

9. **Page 5, Footnote 7:** In stark contrast, when evaluating an affidavit submitted by Petitioner Handler Jacobs, the judge holds her to an entirely different evidentiary bar, ruling, **"Ms. Handler Jacobs' affidavit is plainly not based on personal knowledge in this regard... Her affidavit is thus not cognizable evidence..."**.

   a. *Bias Indicator:* This represents a clear judicial double standard. The court accepts identically worded, self-serving statements from corporate media

executives at face value while summarily throwing out the sworn affidavit of a *pro se* plaintiff as "not cognizable."

**GROUND FOUR: Overreach Into Jacobs' Private Workspace and Possessions**

**10. Page 5, Paragraph 1:** The report openly defends the newspaper photographer's right to enter Plaintiff Jacobs' private, closed home office—which explicitly had a **"Private" sign on the door**—and photograph a private whiteboard because it contained personal notes on financial asset plans.

**11. Page 37, Paragraph 3 & Page 38, Paragraph 1:** The judge explicitly rules that even though Plaintiffs home had a prominent **"No Trespassing" sign posted**, and even if the house-sitter was contractually banned from letting strangers inside, **her presence completely overridden Plaintiffs' property rights**. The judge states that holding the newspaper liable would lead to an **"absurd and unjust result"**.

a. *Bias Indicator:* Declaring that protecting a disabled veteran's private home from corporate media home invasion would be an "absurd and unjust result" demonstrates that the court has abandoned its neutral positioning to actively shield a powerful commercial publisher.

**GROUND FIVE: Weaponization of Handler Jacobs' Medical Diagnoses**

**12. Page 5, Paragraph 1 & Footnote 9:** The judge goes out of his way to detail that the U.S. Marshals badge photographed in Plaintiffs' bedroom was marked "Special Deputy United States Marshal," and then uses a footnote to explicitly record that **"Ms. Handler Jacobs was 'not really' a United States Marshal but was told to say she was."**.

a. *Bias Indicator:* This detail is completely immaterial to a strict copyright or conversion inquiry. Inserting this line into the record serves no legal purpose

other than to unconscionably humiliate Petitioners' family on a public civil docket and subtly cast Handler Jacobs as deceitful.

**GROUND SIX: The Impermissible Usurpation of the Jury Province Regarding the "Questionable" Consent Defense**

**13.** Inside the PFRD's Civil Trespass and Invasion of Privacy analysis (Doc. 237, pp. 36-38), the Magistrate Judge explicitly conceded on the face of the record that the underlying "nature and extent" of house sitter Melissa Carroll's occupancy made her legal authority to permit third-party commercial entries highly "questionable." Under black-letter federal summary judgment jurisprudence and controlling Tenth Circuit law, this explicit concession required the immediate denial of Defendants' summary judgment motion.

a. *Bias Indicator*: When a moving party seeks summary judgment on an affirmative defense—such as third-party apparent authority or consent—they carry an "intensified initial burden" under *Donner v. Nicklaus*, 778 F.3d 857, 876 (10th Cir. 2015). They cannot merely point to a lack of record clarity; they must establish every structural element of that defense so conclusively that no rational jury could find otherwise. By openly documenting that the agent's authority was "questionable," the Magistrate Judge acknowledged the active presence of a genuine dispute of material fact.

b. Instead of denying the motion as mandated by Federal Rule of Civil Procedure 56, the Magistrate Judge engaged in an unconstitutional weighing of evidence and an impermissible assessment of witness credibility. The Magistrate Judge actively resolved the "questionable" factual arrangement herself, drawing self-serving inferences in favor of the moving corporate trespassers to declare Carroll a "possessor" capable of waiving Plaintiffs' property rights. This

flagrant disregard for the Supreme Court's boundaries in *Anderson v. Liberty Lobby* 477 U.S. 242 (1986), constitutes a total abdication of the doctrine of *pro se* solicitude. It demonstrates a deep-seated extrajudicial bias that actively usurped the Seventh Amendment province of the jury to protect the newsroom hierarchy from trial.

## IV. FORENSIC AUDIT OF ADOPTED BIAS IN DOC. 253

### A. The Laundering of the "50-Times Reliance" Contradiction (Page 18, ¶ 2)

**14. The Court's Verbatim Text:** *"Plaintiffs also contend that the PFRD committed a 'manifest error of law' by 'explicitly cit[ing], analyz[ing], and rel[yng] upon' Plaintiffs' proposed amended motion 'over fifty (50) separate times,' while at the same time issuing a 'final, binding denial of that exact same motion in its conclusion.' ... This argument, however, misunderstands the PFRD. Judge Khalsa did not rely on Plaintiffs' proposed amended motion, but rather, out of an abundance of caution and in recognition of Plaintiffs' pro se status, wrote additionally to explain why, even if the proposed amended motion were considered, it would provide no basis for her to reach a contrary result."*

**15. The Absorption of Bias:** This line is a direct judicial cover-up of a massive procedural overreach. Judge Vázquez rationalizes a structural absurdity. A federal court cannot permissibly use an unfiled, denied document 50 separate times to weave its factual analysis, and then strip the *pro se* creator of their right to have that document officially recognized. By recharacterizing this bias as an "abundance of caution" and "extra analysis," the District Judge directly adopted the Magistrate's tactical maneuver to keep Petitioners' cured summary judgment record (Doc. 230) completely off the main docket.

### B. The Total Erasure of James Thompson’s Metadata Confession (Page 11, Paragraph 2)

**16. The Court’s Verbatim Text:** *"Mr. Thompson's admissions, however, are insufficient as a matter of law to establish that Defendants acted knowingly and with the intent to induce, enable, facilitate, or conceal copyright infringement. The Court thus cannot agree with Plaintiffs that Mr. Thompson's admission 'satisfies the 'double scienter' requirement of 17 U.S.C. § 1202(a).' ... [N]either this evidence, nor any other evidence presented by Plaintiffs, establishes that at the time the Journal published the Cannes photograph, Defendants had any knowledge that Mr. Jacobs (or any other person) had any copyright to the photograph..."*

**17. The Absorption of Bias:** This line represents a total disregard for the summary judgment standard under *Anderson v. Liberty Lobby*. Photographer James Thompson explicitly admitted under oath that he used Adobe Photoshop to hardcode his own name into the "Creator" field and "Albuquerque Journal" into the "Copyright Notice" field. For the District Judge to rule that this coded manipulation is "insufficient as a matter of law" to show intent—while ignoring that he actively rewrote the software tags scanned by downstream syndicates—is a direct continuation of the Magistrate’s hostility. The Court drew a flatly adversarial inference to rescue the photographer from a trial-ready dispute over his credibility.

### C. The Devaluation of Plaintiff Jacobs’ 57-Year Photography Archive (P. 12, ¶ 2)

**18. The Court’s Verbatim Text:** *"The Court cannot agree that Judge Khalsa's recommendation rested on any error in understanding the facts, interpreting the law, or applying the law to the facts. Rather, the Court finds that Judge Khalsa accurately applied the relevant law to the facts viewed in the light most favorable to Plaintiffs, and properly determined that, as*

*a matter of law, Mr. Jacobs' proferred [sic] economic damages are too speculative to be actionable."*

**19. The Absorption of Bias:** Here, Judge Vázquez explicitly rubber-stamps the Magistrate's elitist devaluation of Petitioner Jacobs' career. By declaring that his authenticated *People Magazine* replacement terms and NBC News licensing agreements are "too speculative," the District Court fully absorbed the Magistrate's unsupportable legal barrier. They applied a standard that does not exist under *On Davis*, ruling that an unpublished work holds a value of zero dollars unless Petitioner Jacobs can prove a pre-injury retail history. This constitutes an impermissible judicial weighing of expert benchmarks that belongs solely to a jury.

**D. The Complete Disregard for the Property Sign Boundaries (Page 14, ¶ 2)**

**20. The Court's Verbatim Text:** *"First, Judge Khalsa recommended summary judgment on Plaintiffs' trespass claim because it is undisputed that, at the relevant time, Ms. Carroll, who was a known occupant with the ability to permit others to enter the property, gave Ms. Perez and Mr. Thompson consent to enter. ... Judge Khalsa, however, thoroughly considered and properly rejected these arguments, based on an accurate analysis of controlling law. See id. at 36-38. Plaintiffs have provided no new evidence or contrary authority to call into question Judge Khalsa's recommendation..."*

**21. The Absorption of Bias:** This line directly adopts the legal fiction constructed by the Magistrate Judge. The Court completely ignores that the PFRD itself explicitly conceded that the nature of Carroll's authority was **"questionable."** By rubber-stamping her status as a "possessor" who can waive Petitioners' property lines, the District Judge fully ratified the Magistrate's violation of New Mexico Supreme Court precedent (*McNeill v. Rice Engineering,* 2010-NMSC-015, 148 N.M. 16, 229 P.3d 489), which dictates that a temporary caretaker is a

strict licensee with zero title capacity to authorize a corporate media raid past a front yard **"No Trespassing"** sign.

### E. The Whitewashing of the "Picture of a Picture" Conversion (Page 14, ¶ 3)

**22. The Court's Verbatim Text:** *"In their Objections, Plaintiffs argue, for the first time, that the tort of conversion does not require evidence that any Defendant removed the Cannes photograph from their house, but rather can be established by Mr. Thompson having taken a photograph of it. ... This new theory, however, must be deemed waived, as it was 'raised for the first time in objections to the magistrate judge's recommendation.' ... Indeed, even if properly before the Court, this new argument would not win the day, as it runs counter to the legal definition of conversion as 'the unlawful exercise of dominion and control over personal property...'"*

**23. The Absorption of Bias:** This line mimics the exact semantic games played by the Magistrate to protect the newspaper. First, the Court fabricates a "waiver" technicality to pretend Petitioner Jacobs' digitization claims were never raised. Second, it completely misapplies the definition of conversion under *Nosker v. Trinity Land Co.*, 107 N.M. 333, 757 P.2d 803 (N.M. Ct. App. 1988). By ruling that physically removing a print from its display frame to scan its metadata layers into a commercial stock network is not an "exercise of dominion and control," the District Judge adopted the Magistrate's hostile view that treats a professional, custom-lit photographic asset like a common kitchen utensil.

## V. COMPLIANCE WITH LOCAL RULE 7.1(a)

Pursuant to D.N.M.LR-Civ 7.1(a), Plaintiffs contacted defense counsel Gregory P. Williams via email on October 28, 2026, to ascertain Defendants' position on this Motion for Recusal. Defense counsel responded at 3:06 PM on October 28, 2026, stating: "Judge Khalsa is

no longer assigned to this matter. Your motion would thus be moot, and we object to it on that basis." Because Defendants have explicitly entered their formal objection to this filing on the record, this Motion is submitted as a fully contested matter. Plaintiffs note that the Motion is absolutely not moot, as the prior Magistrate's heavily biased PFRD (Doc. 237) serves as the exact structural foundation adopted by the Court to dismiss Plaintiffs' substantive property and damage tracks under Doc. 253.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT this Motion, formally document the recusal and disqualification tracks of Magistrate Judge Kirtan Khalsa, and preserve these structural bias prongs for *de novo* appellate review before the United States Court of Appeals for the Tenth Circuit.

Respectfully submitted this 28th day of October, 2026.

By: */s/ Michael Jacobs*
Michael Jacobs,
*Pro Se* Plaintiff

By: */s/ Ruby Handler Jacobs*
Ruby Handler Jacobs,
*Pro Se* Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of October, 2026, the foregoing Plaintiffs' Motion for Recusal and Disqualification was electronically filed through the Court's CM/ECF system, which will send automatic notification of such filing to all registered counsel of record.

Gregory P. Williams
Charles R. Peifer
PEIFER, HANSON, MULLINS & BAKER, P.A.
Post Office Box 25245
Albuquerque, NM 87125-5245
Tel: 505-247-4800
Email: cpeifer@peiferlaw.com
gwilliams@peiferlaw.com

By: *<u>/s/ Michael Jacobs</u>*
Michael Jacobs,
*Pro Se* Plaintiff